# No. 17-1065

# In the United States Court of Appeals For the Federal Circuit

## BRUNSWICK CORPORATION, SEA RAY BOATS, INC.,
*Appellants,*

v.

## COBALT BOATS, LLC
*Appellee.*

On Appeal from the Patent and Trademark Office
Patent Trial and Appeal Board No. IPR2015-01060

## BRIEF OF APPELLANTS

Julie S. Goldemberg
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5095
(215) 963-5001 (Fax)

David M. Morris
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave.
Washington, DC 20004
(202) 739-3000
(202) 739-3001 (Fax)

Jason C. White
Scott D. Sherwin
MORGAN, LEWIS & BOCKIUS LLP
77 W. Wacker Drive, Ste. 500
Chicago, IL 60601
(312) 324-1000
(312) 324-1001 (Fax)

William R. Peterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188
(713) 890-5001 (Fax)

*Counsel for Appellants, Brunswick Corporation and Sea Ray Boats, Inc.*

## CERTIFICATE OF INTEREST

Counsel for Appellants certifies the following:

**1.      The full name of each party represented by me is:**

Brunswick Corporation and Sea Ray Boats, Inc.

**2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

N/A

**3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of each party represented by me are:**

Sea Ray Boats, Inc. is the wholly owned subsidiary of Brunswick Corporation.  No parent corporation or publicly held company owns 10 percent or more of the stock of Brunswick Corporation.

**4.      The name of all law firms and the partners or associates that appeared for each party now represented by me in the trial court or are expected to appear in this Court is:**

MORGAN, LEWIS & BOCKIUS LLP:          ANDRUS INTELLECTUAL PROPERTY LAW, LLP:
    William R. Peterson                                    Aaron T. Olejniczak
    Jason C. White                                          Christopher R. Liro
    David M. Morris
    Scott D. Sherwin
    Julie S. Goldemberg

                   By: */s/ Jason C. White*

i

Dated: January 27, 2016

Julie S. Goldemberg
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103

Jason C. White
Scott D. Sherwin
MORGAN, LEWIS & BOCKIUS LLP
77 W. Wacker Drive, Ste. 500
Chicago, IL 60601

David M. Morris
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave.
Washington, DC 20004

William R. Peterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Ste. 4000
Houston, TX 77002

# TABLE OF CONTENTS

**Page(s)**

Certificate of Interest ...................................................................................i

Statement of Related Cases..........................................................................1

Statement of Jurisdiction.............................................................................2

Statement of the Issues................................................................................3

Statement of the Case..................................................................................4

Summary of the Argument..........................................................................13

Argument....................................................................................................15

I.      The Board Erred in Failing to Invalidate Claims 2 and 4 ................15

      A.      The Board's waiver findings are erroneous............................15

      B.      Claims 2 and 4 are obvious in view of McCrea and Terleski..................................................................................17

            1.      McCrea discloses stationary arms .................................17

            2.      The other limitations are obvious in light of McCrea and Terleski ......................................................20

II.      Suiter Anticipates Claim 5 of the '880 Patent....................................24

      A.      Suiter discloses a structural equivalent to the means for coupling...................................................................................26

      B.      The Board erred by performing a component-by-component analysis to determine structural equivalence ........29

      C.      Alternatively, Suiter discloses a component equivalent to the "arms" of the '880 Patent....................................................33

**T**ABLE OF **C**ONTENTS (CONTINUED)

**Page**

D.    Suiter discloses the remaining limitations and thus
anticipates Claim 5................................................................35

Conclusion & Prayer for Relief ...........................................................38

Addendum

Proof of Service

Certificate of Compliance

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Antor Media Corp.*,
689 F.3d 1282 (Fed. Cir. 2012) ......................................................... 32

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ................................................... 16, 25

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012) ............................................ 16, 17, 33

*In re Bond*,
910 F.2d 831 (Fed. Cir. 1990) ........................................................ 24

*Caterpillar Inc. v. Deere & Co.*,
224 F.3d 1374 (Fed. Cir. 2000) ................................................... 26, 30

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) ........................................................................ 16

*Data Line Corp. v. Micro Techs., Inc.*,
813 F.2d 1196 (Fed. Cir. 1987) ........................................................ 34

*Dolly, Inc. v. Spalding & Evenflo Cos.*,
16 F.3d 394 (Fed. Cir. 1994) ........................................................... 33

*In re Donaldson Co.*,
16 F.3d 1189 (Fed. Cir. 1994) ........................................................ 29

*In re Ethicon, Inc.*,
No. 2015-1696, 2017 WL 24641 (Fed. Cir. Jan. 3, 2017) ................... 17

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ........................................................ 28

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ........................................................ 29

TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*IMS Technology, Inc. v. Haas Automation, Inc.*,
   206 F.3d 1422 (Fed. Cir. 2000) ...................................................26

*Intel Corp. v. Int'l Trade Comm'n*,
   946 F.2d 821 (Fed. Cir. 1991) ....................................................34

*In re Jolley*,
   308 F.3d 1317 (Fed. Cir. 2002) ..............................................17, 18

*Kegel Co. v. AMF Bowling*,
   127 F.3d 1420 (Fed. Cir. 1997) ...................................................24

*Kemco Sales, Inc. v. Control Papers Co.*,
   208 F.3d 1352 (Fed. Cir. 2000) ...................................................26

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)....................................................................15

*In re Nuvasive, Inc.*,
   842 F.3d 1376 (Fed. Cir. 2016) ..............................................17, 35

*Odetics, Inc. v. Storage Tech. Corp.*,
   185 F.3d 1259 (Fed. Cir. 1999) ............................................*passim*

*Regents of Univ. of Minnesota v. AGA Med. Corp.*,
   717 F.3d 929 (Fed. Cir. 2013) ...............................................24, 37

*In re Sasse*,
   629 F.2d 675 (C.C.P.A. 1980) .....................................................32

*In re Watts*,
   354 F.3d 1362 (Fed. Cir. 2004) ...................................................36

**STATUTES**

35 U.S.C.
   § 102.................................................................................7, 10
   § 141......................................................................................2
   § 311......................................................................................2

vi

**TABLE OF AUTHORITIES (CONTINUED)**

**Page(s)**

**OTHER AUTHORITIES**

M.P.E.P. § 2183 ......................................................................................................26

**STATEMENT OF RELATED CASES**

In *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-CV-00021-HCM-LRL (E.D. Va.), Appellee Cobalt Boats, LLC has accused Appellants Brunswick Corporation and Sea Ray Boats, Inc. of infringement of the claims of U.S. Patent No. 8,375,880 that are challenged in this *inter partes* review.

## STATEMENT OF JURISDICTION

The Patent Trial and Appeal Board had jurisdiction over this *inter partes* review pursuant to Section 311 of Title 35 of the United States Code and entered its Final Written Decision on September 28, 2016.  Appellants timely filed this appeal on October 18, 2016.  This Court has jurisdiction over this appeal of the Board's Final Written Decision pursuant to Section 141 of Title 35 of the United States Code.

## STATEMENT OF THE ISSUES

The Board instituted *inter partes* review of Claims 2 and 4 on the ground of obviousness over U.S. Patent No. 3,501,190 ("McCrea"), and U.S. Patent No. 7,341,016 ("Terleski."). During *inter parties* review, the Board proposed a narrower construction of "arms" and requested supplemental briefing. Appellants argued that even under the narrower construction, McCrea taught "stationary arms." But the Board's Final Written Decision erroneously stated that Appellants did not argue that McCrea taught stationary arms under its new construction.

1. Did the Board err by overlooking (and thus failing to address) Appellants' arguments that McCrea taught "stationary arms" under the Board's new construction?

2. Does McCrea teach "stationary arms," thus rendering Claims 2 and 4 invalid as obvious?

Claim 5 contains a means-plus-function limitation. The Board instituted *inter partes* review of Claim 5 on the ground of anticipation by U.S. Patent No. 4,432,436 ("Suiter").

3. Did the Board err by determining structural equivalence based on a component-by-component analysis?

4. Does Suiter teach an overall structure that is substantially equivalent to the overall structure disclosed in the '880 Patent?

3

## STATEMENT OF THE CASE

Appellants Brunswick Corporation and Sea Ray Boats, Inc. (collectively, "Brunswick") and Appellee Cobalt Boats, LLC are competing boat manufacturers. Brunswick and Cobalt both offer "swim steps," which attach to the stern (back) of the boat and make it easier for swimmers to enter and leave the water.

On January 23, 2015, Cobalt sued Brunswick for patent infringement, alleging that retractable swim steps manufactured by Brunswick infringe U.S. Pat. No. 8,375,880 ("the '880 Patent"), entitled "Retractable Step for Boat Swim Platform."

On April 16, 2016, Brunswick filed a Petition for *Inter Partes* Review of the '880 Patent with the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office. Appx112. After receiving a preliminary response from Cobalt, the Board instituted *inter partes* review of all six claims. Appx1211. This appeal concerns three of those claims—Claims 2, 4, and 5.

### The '880 Patent

The '880 Patent is directed to "a retractable step . . . that is moveable between a stored position and a deployed position" and which can be moved by releasing a lock. '880 Patent, 1:41-47. When deployed, the step "provides a seat on which swimmers may rest while partially submerged in the water or a step for swimmers to use as they transition into or out of the water." *Id.* at 3:61-64.

4

Figure 3 depicts the step in a deployed position. '880 Patent, 2:52-53. The step has moveable arms, 20a and 20b, and stationary arms, 26a and 26b. *Id.* at 2:64-65.



The moveable arms allow the step to flip up into its stored position, depicted in Figure 2 below. *Id.* at 2:26.



To hold the step in its desired deployed position, the '880 Patent describes a "spring biased locking mechanism." *See* '880 Patent, Claim 1.

The three claims relevant to this appeal—Claims 2, 4, and 5—along with Claim 1—from which Claims 2 and 4 depend—appear below:

**Claim 1**:  A retractable step for use with a boat in water comprising:
>a base having a recess;
>a pair of stationary arms, each of said arms coupled with said base;
>a pair of moveable arms, each of said moveable arms coupled with one of said stationary arms;
>a step having a top side and an underside, said step coupled with said moveable arms and capable of being rotated 180° between a stored position within said recess, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and
>a spring biased locking mechanism configured to hold at least one of said moveable arms in a stationary position when said platform is in said deployed position and releasable to accommodate movement of said platform to said stored position.

**Claim 2**:  The retractable step of claim 1, wherein said base is demountably coupled with the boat.

**Claim 4**:  The retractable step of claim 1, wherein said step comprises a material characterized in that it is less dense than water.

**Claim 5**:  A deployable swim step for use with a boat in water comprising:
>a step having a top side and an underside;
>means for coupling said step with the boat, said coupling means configured to permit rotation of said step 180° from a stored position above the water surface, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and
>means for locking said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position.

6

**Inter Partes** *Review of Claims 2 and 4*

For Claims 2 and 4, the Board instituted *inter partes* review on the ground of obviousness over U.S. Patent No. 3,501,190 ("McCrea"),[1] and U.S. Patent No. 7,341,016 ("Terleski.").[2]  Appx1211.

McCrea is titled "Bumper Forming a Reservoir with a Foldable Step" and discloses a retractable step intended to be used on a truck camper.  Appx378-381. Highlighted versions of Figures 1 and 2 of McCrea appear below, along with a close-up of the pin and arm H from Figure 2:



Appx378 (highlighting added).

---

[1] McCrea issued March 17, 1970, more than 40 years before the June 24, 2010 priority date of the '880 Patent, and qualifies as prior art under 35 U.S.C. § 102(b). *See* Appx378.

[2] Terleski issued March 11, 2008, more than 2 years before the June 24, 2010 priority date of the '880 Patent, and qualifies as prior art under 35 U.S.C. § 102(b). *See* Appx382.

Terleski is titled "Folding Watercraft Platform," and, as shown in Figure 1, relates to a rotatable boarding platform for use on a boat.  Appx382-396.



**FIG. 1**

Brunswick contends that these references render Claim 2 obvious:

> McCrea discloses all of the limitations of claims 1, 3, and 6 of the '880 patent except for the spring-biased locking mechanism.  Terleski discloses the spring-biased locking mechanism and also teaches [the] combination.

Appx150 (petition for *inter parties* review).

In its decision instituting *inter partes* review, the Board adopted the broad construction of "arms" urged by Brunswick:  "For purposes of this decision, we are persuaded that the 'arms' recited in claim 1 encompass a projection, as proposed by Petitioner."  Appx1193.

After the oral hearing, the Board ordered additional briefing on claim construction.  Appx4161.  Among other issues, the Board asked the parties to address:

1.    Is it reasonable to construe "arm" as "a slender part of a structure, machine or an instrument projecting from a main part, axis, or fulcrum"?

2.    Even if we were to maintain a construction of "arm" as a projection, is it reasonable to require that projection to be something other than a pivot or a fastener?

Appx4162.

Brunswick responded, first arguing that the Board correctly gave "arm" its broadest reasonable construction in the decision instituting *inter partes* review. Appx4427-4428 ("[T]his new proposal is too narrow to reflect the broadest reasonable construction . . . ."); Appx4431 ("[A] construction of 'arm' that carries with it a negative limitation that an arm must be 'something other than a pivot or fastener' is not reasonable.").

Brunswick also argued that these new constructions would not affect the claims' validity:

Brunswick also submits that the potential changed constructions do not impact the conclusions of invalidity.  Both **McCrea** (pins 10) and Terleski (hinge bases 205) **disclose stationary and moveable arms** not only under the original construction, but **under the potential changed constructions**.  . . . McCrea's pins also are something other than only a pivot or fastener . . . .

Appx4433 (emphasis added).

In its Final Written Decision, the Board adopted the "other than a pivot or fastener" construction of "arm":  "[W]e determine that the term 'arm' encompasses

a projection, but that projection must be something more than simply a pivot coupling or fastener." Appx12.

In analyzing validity, the Board apparently overlooked Brunswick's arguments: "Petitioner does not address how McCrea teaches 'stationary arms' under that construction." Appx23. As a result of this erroneous waiver determination, the Board concluded that "McCrea's pivot pin 10 is nothing more than a pivot coupling or a fastener" and thus Brunswick "failed to establish sufficiently that McCrea teaches 'stationary arms' as required by claim 1." Appx23. The Board thus determined "that Petitioner has failed to demonstrate, by a preponderance of the evidence, that claims 1, 2, 4, and 6 would have been obvious over McCrea and Terleski." Appx21.

### Inter Partes *Review of Claim 5*

For Claim 5, the Board instituted *inter partes* review on the ground of anticipation by U.S. Patent No. 4,432,436 ("Suiter").[3]

Suiter is titled "Adjustable Transom Brackets and Compact Self-Storing Boat Ladder," and Suiter's deployable ladder is depicted below in Figure 1:

---

[3] Suiter issued February 21, 1984, more than 26 years before the June 24, 2010 priority date of the '880 Patent, and qualifies as prior art under 35 U.S.C. § 102(b). *See* Appx397.



Appx398.   Figures 2 and 3 depict Suiter's step in the deployed and stored positions:



Appx398-399 (highlighting added). Step 26 is attached to post 24 (highlighted in orange), which is coupled to brackets 18 (highlighted in purple) that are attached to the boat (un-highlighted).

Claim 5 recites a "means for coupling the step with the boat," which the Board determined to be a means-plus-function limitation. Appx1195. The Board construed this phrase to be the structures disclosed in the specification "and equivalent structures at the time of patent issuance." Appx1196. "The structure described in the Specification of the '880 patent as corresponding to the 'means for coupling' includes at least the pair of moveable arms 20a, 20b and the pair of stationary arms 26a, 26b."[4] Appx26.

In its Final Written Decision, the Board determined that Suiter did not anticipate Claim 5 because a single moveable post (*i.e.*, Suiter's post 24) is not a pair of moveable arms. Appx27. The Board also concluded that Suiter's single moveable arm is not an equivalent to a pair of moveable arms and that, therefore, Suiter does not anticipate Claim 5 of the '880 Patent. Appx27-28. The Board thus concluded that Brunswick "failed to demonstrate, by a preponderance of the evidence, that claim 5 is anticipated by Suiter." Appx26. This appeal followed.

---

[4] In this appeal, Brunswick is not challenging the Board's construction of "means for coupling." Brunswick expressly reserves its rights to challenge this construction in other proceedings.

## SUMMARY OF THE ARGUMENT

The combination of McCrea and Terleski renders Claims 2 and 4 obvious. The Board rejected Brunswick's obviousness challenge only by concluding that "McCrea's pivot pin 10 is nothing more than a pivot coupling or a fastener." Appx23.  The Board erred in stating that Brunswick "does not address how McCrea teaches 'stationary arms'" under the Board's construction of "arms." Appx23.  In fact, Brunswick demonstrated that McCrea teaches "stationary arms" under the Board's construction.  Appx4433.

The pins in McCrea, which project outward from the base and support the moveable arms, are more than pivot couplings or fasteners.  Appx379 at 2:32-34. McCrea thus teaches the "stationary arms" limitation.  This Court should render judgment that Claims 2 and 4 are invalid.

The Board also erred in finding Suiter did not anticipate the "means for coupling" means-plus-function limitation in Claim 5.  Appx1195.  The Board first applied the wrong legal standard, suggesting that structural equivalence requires an "insubstantially different structure."  Appx26.   But structural equivalence can be shown in several ways, including the function-way-result test.   Under this test, Suiter discloses an equivalent structure because it performs an identical function in substantially the same way to produce to substantially the same result as the structure disclosed in the '880 Patent.

The Board also erred by comparing specific components of Suiter's structure to specific components of the structure in the '880 Patent. The correct comparison is between the overall structures, not individual components. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1268 (Fed. Cir. 1999).

In any event, Suiter's moveable post is equivalent to the moveable arms disclosed in the '880 Patent. Cobalt's expert testified that Suiter's post would require an additional plate or brace for stability, but this opinion conflicts with the presumption of operability given to Suiter, which does not disclose a plate or brace. Since Suiter also discloses the remaining limitations, this Court should render judgment that Claim 5 is anticipated.

**ARGUMENT**

## I.     The Board Erred in Failing to Invalidate Claims 2 and 4

The Board concluded that Brunswick failed to prove its obviousness challenge to Claims 2 and 4 "[b]ecause McCrea's pivot pin 10 is nothing more than a pivot coupling or a fastener."  Appx23.  The Board apparently reached this conclusion based on an erroneous waiver finding.  *See* Appx23 (stating that Brunswick "does not address how McCrea teaches 'stationary arms'" under the Board's construction).  To the contrary, Brunswick's arguments demonstrated that McCrea teaches "stationary arms" under the Board's construction.  Appx4433.

McCrea thus teaches stationary arms, and the combination of McCrea and Terleski renders Claims 2 and 4 obvious.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) ("Section 103(a) forbids issuance of a patent when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'").

### A.     The Board's waiver findings are erroneous

The Board's Final Written Decision states that Brunswick "does not address how McCrea teaches 'stationary arms'" under the Board's constructions of "arms." Appx23.   The Board apparently overlooked the portions of Brunswick's brief addressing precisely this point:

15

Both McCrea (pins 10) and Terleski (hinge bases 205) disclose stationary and moveable arms not only under the original construction, but under the potential changed constructions. . . . McCrea's pins also are something other than only a pivot or fastener, as would be found for example with a cotter pin or similar structure. McCrea's pins, like the stationary arms of the '880 patent, are part of the structure that supports the moveable arms and step. McCrea expressly discloses that "Arms H are pivotally supported . . . by pins 10 that project outwardly." Dr. Garris explained that structure [sic] can be both an arm and a fastener. McCrea's arms H meet the moveable arms limitation of claim 1, and satisfy not only the preliminary construction of projections but also are slender parts of a structure that project from an axis, and that are not merely pivots or fasteners.

Appx4433 (internal citations omitted).

This Court "review[s] the Board's legal conclusions *de novo* and its factual findings for substantial evidence." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1236 (Fed. Cir. 2016). It is unclear whether the Board's determination that Brunswick "does not address how McCrea teaches 'stationary arms,'" Appx23, should be treated as a legal or factual conclusion. But even under the deferential standard applied to factual findings, the Board erred. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). No evidence supports the Board's determination because the portion of Brunswick's brief quoted above conclusively establishes the contrary. Under any standard of review, the Board erred.

16

Because of this error, the Board did not address Brunswick's arguments. *See In re Nuvasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016) (reversing when the Board failed to articulate its reasoning). The Board's judgment "must be reviewed on the grounds upon which the Board actually relied." *Applied Materials*, 692 F.3d at 1294. The Board erred in concluding that Brunswick failed to brief obviousness under the Board's construction. This Court should, at a minimum, vacate the aspects of the Final Written Decision and remand to the Board.

### B. Claims 2 and 4 are obvious in view of McCrea and Terleski

Rather than remanding, this Court should render judgment that Claims 2 and 4 are obvious in light of McCrea and Terleski. "Obviousness is a question of law, based on underlying factual findings, including what a reference teaches[.]" *In re Ethicon, Inc.*, No. 2015-1696, 2017 WL 24641, at *3 (Fed. Cir. Jan. 3, 2017).

### 1. McCrea discloses stationary arms

The Board rejected the obviousness challenge only because it overlooked the arguments quoted above: "Because McCrea's pivot pin 10 is nothing more than a pivot coupling or a fastener, Petitioner has failed to establish sufficiently that McCrea teaches 'stationary arms' as required by claim 1." Appx23.

The evidence before the Board supported only one reasonable conclusion: McCrea's pivot pin 10 is more than a pivot coupling or fastener. *See In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002) ("If the evidence in record will support

several reasonable but contradictory conclusions, we will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative."). There is no possibility of "drawing two inconsistent conclusions from the evidence." *Id.* at 1320.

Here is Figure 2 from McCrea, with the key portion zoomed in:



Appx450. McCrea discloses a step (colored yellow) connected to two moveable arms (colored orange and labeled H). These moveable arms are connected to the bumper of the truck by pins 10 (colored purple). McCrea's specification explains that the pins "project outwardly" and support the arms: "Arms H are pivotally supported at their upper ends by pins 10 that project outwardly from adjacent faces 12 of the reservoirs A-1 and A-2." Appx379 at 2:32-34.

These pins 10 are "stationary arms." They "pivotally support" McCrea's moveable arms in the same way that the stationary arms of the '880 Patent are "pivotally coupled" with the moveable arms. '880 Patent, 2:63-64. And the pins

18

10 "project outwardly" from the base in the same way that the stationary arms of the '880 Patent "are coupled with" the base.

Pin 10 is thus "more than a pivot coupling or fastener." because it also **supports** the moveable arm and projects outwardly from the base. Appx379 at 2:32-34; *see also* Appx450 (Dr. Garris Declaration discussing McCrea).

Pin 10 contrasts with the "pivot coupling" discussed in the '880 Patent, which merely connects the stationary arm and moveable arm. *See* '880 Patent, 3:7-8 (discussing the "pivotal coupling between stationary arm 26a and moveable arm 20a"). In adopting its construction of "arms," the Board relied on the discussion of "pivot coupling" in the '880 Patent's specification. *See* Appx11 ("[A]s Patent Owner notes, the '880 patent distinguishes between its arms and the pivot coupling."). Because it supports the moveable arm, McCrea's pin 10 is more than the pivot coupling discussed in the '880 Patent.

Pin 10 is also more than a "fastener." It does not simply fasten arm H to the base but both supports arm H and permits the pivoting of arm H discussed above. Appx379 at 2:32-34.

Pin 10 is thus more than a pivot couple and a fastener. As Brunswick's expert, Dr. Garris, explained, "[I]t is an arm, **and** it is a fastener." Appx1550 at

197:10 (emphasis added).[5]  Similarly, as the Board noted in its claim construction, "[A] 'pivot structure' may be part of an arm."  Appx12; *see also id.* ("[A] pivot structure could be part of an arm . . . .").  This describes pin 10 perfectly: an arm with a fastener and a pivot structure.

The Board offers no reasoning in support of its statement that McCrea's pivot pin 10 "is nothing more than a pivot coupling or a fastener," Appx23, which appears to be the result of the Board overlooking Brunswick's arguments. However, since McCrea's pin 10 supports the moveable arm, it is more than a pivot coupling or a fastener, and McCrea thus discloses the stationary arms limitation.

### 2.    The other limitations are obvious in light of McCrea and Terleski

The Board's conclusion that McCrea did not teach "stationary arms" was the only reason that it concluded that Brunswick failed to demonstrate that Claims 2 and 4 would have been obvious over McCrea and Terleski.  Appx21.  As described in detail below, the remaining limitations of Claims 2 and 4, which depend from Claim 1, are obvious in light of the combination of McCrea and Terleski.

---

[5] Cobalt was incorrect to claim that Dr. Garris "agrees that the pivot pin merely acts as a fastener."  Appx22 (quoting Appx1475).  To the contrary, in his deposition testimony quoted above, Dr. Garris testified that the pin was both an arm and a fastener.

**[1a] *A retractable step for use with a boat in water comprising:***

To the extent the preamble is limiting, Terleski discloses "a folding platform for mounting to an outer surface of a watercraft." Appx392 at 1:66-67.

**[1b] *a base having a recess;***

McCrea discloses a base that is a bumper, with an indentation or alcove, *i.e.*, a recess, for storing the foldable step. Appx378.

**[1c] *a pair of stationary arms, each of said arms coupled with said base;***

*See supra* pp. 17-20.

**[1d] *a pair of moveable arms, each of said moveable arms coupled with one of said stationary arms;***

McCrea discloses, "Arms H are pivotally supported at their upper ends by pins 10." Appx379 at 2:32-34.

**[1e] *a step having a top side and an underside, said step coupled with said moveable arms and capable of being rotated 180° between a stored position within said recess, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and***

McCrea discloses step G having a top side (highlighted in yellow in Figure 1, below) and an underside (highlighted in blue). The step is coupled to the moveable arms H (highlighted in orange), and rotates 180 degrees, *i.e.*, at least 180 degrees, between a stored position (Figure. 1), wherein the underside (blue) is unconcealed, and a deployed position (Figure. 2), wherein the top side (yellow) is unconcealed. When stored, the step fits into the recess (light green) "with the step

21

G then cooperating with the tops of the reservoirs A-1 and A-2 to provide a substantially continuous surface." Appx379 at 3:14-16.



**[1f] a spring biased locking mechanism configured to hold at least one of said moveable arms in a stationary position when said platform is in said deployed position and releasable to accommodate movement of said platform to said stored position.**

Terleski teaches a folding watercraft platform. "In a deployed position, pins may be fitted into the hinge mechanism to hold the platform stably in a substantially horizontal position." Appx392 at 3:43-45; *see also id.* at 5:34-37. "The pins 401 and 403 may be deformable to ease retraction and insertion and spring-loaded to return to a default shape to ensure their secure retention when engaged with other elements of the articulated hinge mechanism." *Id. at* 5:38-41.

Thus, Terleski discloses a device that includes a spring biasing a moveable member to interlock two components. Further, in combination, Terleski's locking mechanism is configured to hold McCrea's moveable arm H in a stationary position when deployed and is releasable to accommodate movement of the step G to the stored position. As Dr. Garris explained in detail, one of ordinary skill in the art would incorporate the spring-biased locking mechanism of Terleski with the retractable step of McCrea in order to provide stability in the deployed position. Appx453-455 at ¶¶ 95-97; Appx1548 at 191:19; Appx1549 at 192:9; Appx1549 at 193:16-194:10; Appx1559 at 233:9-235:16.

> *[2a] The retractable step of claim 1, wherein said base is demountably coupled with the boat.*

McCrea teaches that the reservoir bumper base is for "removably mounting" to the vehicle. Appx379 at 1:23-25; *see also id.* at 1:46-48, 2:68-70. It would be obvious to one of ordinary skill in the art to demountably couple the base to a boat when this structure is utilized on a watercraft, based on the teachings of Terleski or other references. Appx455 at ¶98.

> *[4a] The retractable step of claim 1, wherein said step comprises a material characterized in that it is less dense than water.*

Terleski further discloses that in "the present invention the platform 109 might alternatively be made of other materials, such as wood." Appx392 at 6:60-63. The disclosure of a wood step inherently discloses a step made from a material

that is less dense than water, or else it would be obvious to one of ordinary skill in the art to select a type of wood that is less dense than water, such as teak that is common in marine applications, when the structure of McCrea is utilized on a watercraft.  Appx456.

\* \* \*

In combination, McCrea and Terleski thus teach all of the limitations of Claims 2 and 4, including the "stationary arms," and render Claims 2 and 4 invalid as obvious.

## II.    Suiter Anticipates Claim 5 of the '880 Patent

A patented invention is anticipated by a prior art reference if that reference discloses all elements of the claimed invention, including means-plus-function structures or their equivalents.  *Regents of Univ. of Minnesota v. AGA Med. Corp*., 717 F.3d 929, 940 (Fed. Cir. 2013) (citing *Kegel Co. v. AMF Bowling*, 127 F.3d 1420, 1430 (Fed. Cir. 1997)).  Thus, means-plus-function claims "may nonetheless be anticipated" even though "[t]he disclosed and prior art structures are not identical."  *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990).

The Board erred in finding Suiter did not anticipate Claim 5's "means for coupling," which the Board construed as requiring a structure of "at least the pair of moveable arms 20a, 20b and the pair of stationary arms 26a, 26b."  Appx14, Appx26.

Suiter discloses an equivalent structure to the "means for coupling" structure of the '880 Patent.  And Suiter's post 24 and brackets 18 perform the identical function in substantially the same way to achieve substantially the same result as the structure disclosed in the '880 Patent's specification.  Appx159-160.  Suiter therefore discloses the "means for coupling" limitation.

The Board reached its contrary conclusion by undertaking a component-by-component analysis of structural equivalence, which this Court has rejected.  *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1268 (Fed. Cir. 1999) ("The component-by-component analysis used by the district court finds no support in the law.").  Alternatively, even under a component-by-component analysis, Suiter's post 24 and brackets 18 disclose Claim 5's "means for coupling."

Because Suiter also discloses the remaining limitations, it anticipates Claim 5.  This Court should reverse the Board's decision and render a judgment that Claim 5 is anticipated.

As mentioned previously, this Court "review[s] the Board's legal conclusions *de novo* and its factual findings for substantial evidence." *Apple,* 842 F.3d at 1236.

## A.     Suiter discloses a structural equivalent to the means for coupling

This Court has recognized at least three different ways to show that a reference is "structurally equivalent."   A prior art reference discloses a "structurally equivalent" limitation if:

(1)     it performs the identical function specified in the claim in substantially the same way, and produces substantially the same results as the corresponding element disclosed in the specification, *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352 (Fed. Cir. 2000); **or**

(2)     a person of ordinary skill in the art would have recognized the interchangeability of the element shown in the prior art for the corresponding element disclosed in the specification, *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374 (Fed. Cir. 2000); **or**

(3)     there are insubstantial differences between the prior art element and the corresponding element disclosed in the specification, *IMS Technology, Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1436 (Fed. Cir. 2000).

In its briefing to the Board, Cobalt acknowledged these three different methods of proving structural equivalence.   Appx1447 (Patent Owner's Response); s*ee also* M.P.E.P. § 2183 (describing these three tests as appropriate ways patent examiners may reject a means-plus-function claim in view of prior art that discloses equivalent structure).

Suiter is structurally equivalent because it performs the same function as Claim 5 in substantially the same way and produces substantially the same results.

26

Claim 5 recites a "means for coupling said step with the boat, said coupling means configured to permit rotation of said step 180° from a stored position above the water surface, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed."  '880 Patent, Claim 5. The "means for coupling" thus performs the function of coupling the step with the boat such that the step is configured to rotate 180° from a stored position above the water surface and a deployed position below the water surface.

Similarly, Suiter's brackets 18 and post 24 structure permits rotation of the step 180° from the depicted stored position to the deployed position where the step is below the water surface.   Appx1483; Appx1562; Appx1939; Appx3315; Appx3435-3436.   Figure 3 illustrates Suiter's step in the stored position, and Figure 2 shows it rotated 180° to the deployed position:



Appx398-399.

Cobalt admitted that the post 24 of Suiter rotates 180° about an axis, and its expert testified that Suiter's step rotates 180° with the post about that same axis.[6] Appx1483; Appx1939; Appx3435-3436; Appx3315; *see also* Appx1562-1565. This 180° rotation with the moveable arm is precisely the rotation described in Claim 5. Appx3428-3429. Suiter's post and brackets structure performs the identical function of Claim 5.

Suiter also performs that function in substantially the same way as Claim 5—by supporting the step and allowing pivoting movement about the base. *Compare* '880 Patent, 2:63-3:3 *with* Appx401 at 2:25-34; 2:50-55.

Finally, Suiter's structure achieves substantially the same result as Claim 5—movement of the step from a stored position out of the water to a deployed position in the water. *Compare* '880 Patent Figs. 2-3 *with* Appx398.[7]

---

[6] Suiter's step also folds downward along the post, but this does not negate the rotation meeting the claimed function.

[7] Although *Odetics* and several other cases cited in this section discuss structural analyses performed to determine infringement, those analyses are analogous to invalidity determinations and, therefore, are applicable to this issue. *See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009) ("Just as a patentee who seeks to prove infringement must provide a structural analysis by demonstrating that the accused device has the identified corresponding structure or an equivalent structure, a challenger who seeks to demonstrate that a means-plus-function limitation was present in the prior art must prove that the corresponding structure—or an equivalent—was present in the prior art.") (citing

Under the function-way-result test, Suiter's overall coupling structure of the post 24 and brackets 18 is structurally equivalent to claim 5's means for coupling.

## B.   The Board erred by performing a component-by-component analysis to determine structural equivalence

The Board erred by focusing on a single method of proving structural equivalence:  "In order to be an equivalent, there **must be** insubstantially different structure."  Appx26 (emphasis added; citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)).  The Court reviews the Board's legal determinations—such as the legal standard for showing structural equivalence—*de novo*.  *In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000).

The Board applied the wrong standard—as discussed above, there are several different ways of showing structural equivalence (including the function-way-result test).  *See* Appx1447 (Cobalt acknowledging the different methods of proving equivalence).  Insubstantial difference is merely one way to demonstrate structural equivalence.

The Board also applied the insubstantial difference standard incorrectly.  The Board compared components of Suiter's structure to particular components of

---

*In re Donaldson Co.*, 16 F.3d 1189, 1193 (Fed. Cir. 1994) (*en banc*) ("[W]e hold that paragraph six applies regardless of the context in which the interpretation of means-plus-function language arises, *i.e.*, whether as part of a patentability determination in the PTO or as part of a validity or infringement determination in a court.")).

the structure described in the '880 Patent: "Patent Owner explains that 'the post [in Suiter] does not support the step in the same manner as do **the arms** of the '880 Patent[.]'" Appx27 (quoting Appx1484; emphasis added). The Board concluded: "Weighing the evidence before us, Petitioner has failed to establish sufficiently that **a single moveable arm** is insubstantially different from the structure described in the '880 patent." Appx27-28 (emphasis added). Rather than comparing the structures as a whole, the Board compared particular components of the structures: the arms and the post.

This Court rejected this approach in *Odetics*, a case in which a district court found no equivalence after performing a "component-by-component" analysis. 185 F.3d at 1266. In reversing the district court's judgment, this Court explained: "The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function." *Id.* at 1268 (internal citations omitted). Rejecting a focus on individual components, this Court added that "[f]urther deconstruction or parsing" of the overall structure "is incorrect." *Id.* "The component-by-component analysis used by the district court finds no support in the law." *Id.*; *see also Caterpillar Inc.*, 224 F.3d at 1380 (a structure lacking several components of the overall structure corresponding to the claimed function

30

and also differing in the number and size of the parts may be equivalent to the disclosed structure).

The Board contravened *Odetics* by deconstructing the structure of the '880 Patent and asking whether Suiter provided a component that corresponded to "the arms of the '880 Patent." But structural equivalency does not require component-by-component equivalency. Indeed, this Court holds that "structures with different numbers of parts may still be equivalent." *Odetics*, 185 F.3d at 1268.

The Board should not have compared moveable arms—a component of the means for coupling—to Suiter's post. Instead, the Board should have compared the overall structure of Suiter that couples the step to the boat (*i.e.*, the post 24 and the brackets 18) to the overall structure of the means for coupling (*i.e.*, "at least the pair of moveable arms 20a, 20b and the pair of stationary arms 26a, 26b").

The Board's reliance on the testimony of Cobalt's expert underscores its mistake. Cobalt's expert testified that incorporating post 24 into the structure of the '880 Patent would require "a sizeable plate (or brace) . . . to be placed along the bottom side of the step for stability." Appx27 (quoting Appx1484-1485, Appx2004-2006). In effect, the Board found that Suiter was a substantially different structure because a single component (the post) of Suiter could not substitute for a particular component (the arms) of the structure of the '880 Patent.

31

Even if the Board's approach to the analysis were correct, the Board erred by crediting Cobalt's expert. Cobalt's expert testified that a "sizeable plate (or brace)" would be necessary if Suiter were coupled with a large step, such as the step depicted in various diagrams of the '880 Patent. But Claim 5 does not limit the size or the shape of the step, and the '880 Patent's specification specifies that the step can be of any shape or size.[8] There is no reason that a plate would be structurally necessary for stability for a smaller, narrower step.

Suiter, for example, uses steps that are significantly smaller and narrower than the step illustrated in the '880 Patent. Suiter supports these steps without reliance on a "sizeable plate (or brace) . . . for stability." As an issued United States patent, Suiter is entitled to a presumption of operability. *See, e.g.*, *In re Antor Media Corp.*, 689 F.3d 1282, 1287-88 (Fed. Cir. 2012) ("[B]oth claimed and unclaimed materials disclosed in a patent are presumptively enabling"); *In re Sasse*, 629 F.2d 675, 681 (C.C.P.A. 1980) (giving a prior art patent the presumption of the operability). Even if Cobalt's expert were correct that a plate would be necessary if the post of Suiter were coupled with a large step, this evidence does not demonstrate that the overall structure of Suiter (when used with

---

[8] *See, e.g.*, '880 Patent, 3:32-35 ("Although rectangular shapes have been described for step 12 and base 14, step 12 and base 14 **may be any shape** including but not limited to circular, semi-circular, triangular, substantially polygonal, or any combination of these shapes." (emphasis added)).

the steps disclosed in Suiter) operates differently than the overall structure of the '880 Patent. Particularly in light of the presumption of operability, the Board should have disregarded the testimony of Cobalt's expert about the need for a plate or brace, which is not evidence that a reasonable mind would accept as evidence to support a conclusion. *Applied Materials*, 692 F.3d at 1294.[9]

The Board erred by considering only one method of proving equivalence and by conducting a component-by-component analysis.

## C. Alternatively, Suiter discloses a component equivalent to the "arms" of the '880 Patent

Even if components of Suiter must be structural equivalents of particular components of the '880 Patent, the Board erred in finding that Suiter's post 24 is not equivalent to the pair of moveable arms found in the '880 Patent.

This Court has repeatedly held that a single structure can be an equivalent to multiple structures, provided the single structure performs the same function. *See, e.g.*, *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 398 (Fed. Cir. 1994) ("An accused device may infringe under the doctrine of equivalents even though a

---

[9] There are two ways of interpreting the testimony of Cobalt's expert. If the expert meant that Suiter would require a stabilizing plate only when used when a large step (such as the step illustrated in the '880 Patent), then the Board applied the wrong legal standard, because Claim 5 is not limited to steps of a particular size. Alternatively, if the expert meant that Suiter would require a stabilizing plate when used with steps of any size (such as the steps used in Suiter), then the testimony could not be credited, given that Suiter includes no such plate and receives a presumption of operability. Either way, the Board erred.

combination of its components performs a function performed by a single element in the patented invention.") (citing *Intel Corp. v. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)); *Data Line Corp. v. Micro Techs., Inc.*, 813 F.2d 1196, 1202 (Fed. Cir. 1987) (single sensor equivalent to disclosed multiple sensors). Suiter simply uses one component to perform a function performed by two elements of the '880 Patent.

But "structures with different numbers of parts may still be equivalent" under § 112 ¶6. *Odetics*, 185 F.3d at 1268. The distinction between one post and two arms is particularly meaningless in this case, where Suiter's hollow rectangular post operates in the same manner as two moveable arms. *See* Appx398. Suiter's post 24 is a hollow rectangular structure. *Id.* Suiter's two stationary arms (brackets 18, highlighted in purple) each connect to an opposite side of post 24:



Appx398.  Mechanically, the two sides of the moveable post that are connected to stationary brackets operate identically to two moveable arms connected to stationary arms.  Suiter's post 24 performs the identical function in substantially the same way and produces substantially the same results as the pair of moveable arms of the '880 Patent.

The Board erred by applying a component-by-component test for equivalence.  But even when considering the structures component by component, the Board applied in the wrong standard in failing to conclude that Suiter's single post 24 is structurally equivalent to the pair of moveable arms disclosed in the '880 Patent.

### D.    Suiter discloses the remaining limitations and thus anticipates Claim 5

In its Patent Owner Response, Cobalt argued only that Suiter does not disclose a means for coupling and did not dispute the other elements of Claim 5.  Appx1482-1485.   As discussed above, Suiter discloses Claim 5's means for coupling.  Because Cobalt did not argue that Suiter lacks any other of Claim 5's limitations, this Court can render a judgment invalidating Claim 5 without considering whether Suiter discloses the remaining limitations.  *See In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016) ("we have held that a party waives an argument that it 'failed to present to the [Board]' because it deprives the court of

'the benefit of the [Board]'s informed judgment'") (citing *In re Watts*, 354 F.3d 1362, 1367-68 (Fed. Cir. 2004)).

Even if Cobalt has not waived the arguments, Suiter discloses the remaining limitations of Claim 5:

*[5a] A deployable swim step for use with a boat in water comprising:*

To the extent the preamble is limiting, Suiter discloses a deployable "ladder for ascending from the water over the transom of small boats." Appx397-398; *see also* Appx460.

*[5b] a step having a top side and an underside;*

Suiter discloses a step 26, having a top side (highlighted in yellow in Suiter's Figure 2 on p. 34, *supra*) and an underside. Appx460-461.

*[5c] means for coupling said step with the boat, said coupling means configured to permit rotation of said step 180° from a stored position above the water surface, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed;*

*See supra* pp. 24-35.

*[5d] and means for locking said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position.*

Suiter discloses that "flanges have a plurality of apertures 36 at lower portions thereof and a stop pin 38 may be passed crosswise between a selected pair of apertures." Appx401 at 2:57-60; Appx399. The pin may be removed from the orifice to accommodate movement into the upward stored position. Appx463-464.

36

Thus, Suiter discloses a locking mechanism identical to the locking mechanisms disclosed in the '880 Patent. *See* '880 Patent, 3:14-21, 39-41 (disclosing a spring biased locking mechanism, a common cotter pin, a fastening eye bolt, and a trap door automatic catch lock as structures for the "means for locking" limitation). This structure is capable of performing the functional aspect of the limitation by placing the pin in one of the apertures to lock the step in the deployed position. Appx464-465.

\* \* \*

The Board's conclusion that Brunswick failed to establish Claim 5 to be unpatentable in view of Suiter because Suiter lacks a "means for coupling" was based on an incorrect legal standard. Suiter's post 24 and brackets 18 disclose a structure equivalent to the patented structure because they perform the identical function in substantially the same way to produce substantially the same result. And even under the Board's (erroneous) component-by-component test, Suiter discloses a component that is structurally equivalent to the pair of moveable arms.

Under the Board's claim constructions, Suiter discloses all limitations of Claim 5 of the '880 Patent and therefore anticipates Claim 5. *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 940 (Fed. Cir. 2013).

## CONCLUSION & PRAYER FOR RELIEF

For the foregoing reasons, this Court should reverse the Board's Final Written Decision and render judgment that Claims 2, 4, and 5 of the '880 Patent are invalid.

Dated: January 27, 2017

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ *Jason C. White*

Julie S. Goldemberg
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5095
(215) 963-5001 (Fax)

Jason C. White
Scott D. Sherwin
MORGAN, LEWIS & BOCKIUS LLP
77 W. Wacker Drive, Ste. 500
Chicago, IL 60601
(312) 324-1000
(312) 324-1001 (Fax)

David M. Morris
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave.
Washington, DC 20004
(202) 739-3000
(202) 739-3001 (Fax)

William R. Peterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188
(713) 890-5001 (Fax)

*Counsel for Appellants, Brunswick Corporation and Sea Ray Boats, Inc.*

# ADDENDUM

| Document | Appx Page Nos. |
|---|---|
| Final Written Decision | Appx1-44 |
| U.S. Patent No. 8,375,880 | Appx45-51 |

Trials@uspto.gov                                                     Paper 78
Tel: 571-272-7822                              Entered:  September 28, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————————

BRUNSWICK CORP. and SEARAY BOATS, INC.,
Petitioner,

v.

COBALT BOATS, LLC,
Patent Owner.

——————————

Case IPR2015-01060
Patent 8,375,880 B1

————————————

Before RICHARD E. RICE, MITCHELL G. WEATHERLY, and
JEREMY M. PLENZLER, *Administrative Patent Judges*.

PLENZLER, *Administrative Patent Judge*.

FINAL WRITTEN DECISION
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2015-01060
Patent 8,375,880 B1

## I.    INTRODUCTION

### A. Background

Brunswick Corp. and SeaRay Boats, Inc. (collectively, "Petitioner") filed a Petition to institute an *inter partes* review of claims 1–6 ("the challenged claims") of U.S. Patent No. 8,375,880 B1 (Ex. 1001, "the '880 patent").  Paper 1 ("Pet.").  In our Decision on Institution (Paper 11, "Decision to Institute" or "Dec."), we instituted a trial to review the patentability of claims 1–6 based on the following grounds:

| References | Basis | Claims Challenged |
|---|---|---|
| Jaramillo[1] and Curi[2] | § 103 | 1, 3, and 6 |
| Jaramillo, Curi, and Bayliner[3] | § 103 | 1, 3, and 6 |
| Jaramillo, Curi, Terry[4], and Ord[5] | § 103 | 1, 3, and 6 |
| McCrea[6] and Terleski[7] | § 103 | 1, 2, 4, and 6 |
| Suiter[8] | § 102 | 5 |

Petitioner provides testimony from Charles Garris, Ph.D.  Ex. 1012 ("the Garris Declaration").  Patent Owner provides testimony from Kevin Breen.  Ex. 2051 ("the Breen Declaration").

---

[1] U.S. Pat. No. 5,970,905, iss. Oct. 26, 1999 (Ex. 1003, "Jaramillo").
[2] U.S. Pat. No. 7,314,019, iss. Jan. 1, 2008 (Ex. 1004, "Curi").
[3] BAYLINER 185, 195, 205, & 225 RUNABOUTS OWNER'S MANUAL SUPPLEMENT (2006) (Ex. 1005, "Bayliner").
[4] U.S. Pat. No. 4,462,485, iss. July 31, 1984 (Ex. 1007, "Terry").
[5] U.S. Pat. No. 4,293,967, iss. Oct. 13, 1981 (Ex. 1006, "Ord").
[6] U.S. Pat. No. 3,501,190, iss. Mar. 17, 1970 (Ex. 1008, "McCrea").
[7] U.S. Pat. No. 7,341,016, iss. Mar. 11, 2008 (Ex. 1009, "Terleski").
[8] U.S. Pat. No. 4,432,436, iss. Feb. 21, 1984 (Ex. 1010, "Suiter").

IPR2015-01060
Patent 8,375,880 B1

Subsequent to institution, Cobalt Boats, LLC ("Patent Owner") filed a Patent Owner Response. Paper 67 ("PO Resp.").[9] Petitioner filed a Reply to the Patent Owner Response. Paper 65 ("Pet. Reply").[10] Patent Owner additionally filed a contingent motion to amend, Paper 27 ("MTA"), Petitioner filed an opposition to that motion, Paper 36 ("MTA Opp."), and Patent Owner filed a reply to that opposition, Paper 39 ("MTA Reply"). Pursuant to our authorization, Paper 42, Petitioner filed a sur-reply to Patent Owner's MTA Reply, Paper 47 ("MTA Sur-reply").

An oral hearing was held on July 14, 2016, and a transcript of the hearing is included in the record. Paper 72 ("Tr.").[11] Subsequent to the oral hearing, we ordered additional briefing on claim construction. Paper 69 ("CC Order"). Pursuant to that order, the parties submitted the requested briefing. Paper 75 ("Pet. Br."); Paper 77 ("PO Br.").

We have jurisdiction under 35 U.S.C. § 6. This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73.

For the reasons that follow, we determine that Petitioner has shown, by a preponderance of the evidence, that claims 1, 3, and 6 of the '880 patent are unpatentable, but has failed to establish sufficiently that claims 2, 4, and 5 of the '880 patent are unpatentable. Patent Owner has failed to establish patentability of proposed substitute claims 7, 9, and 12.

---

[9] Paper 67 is a redacted version of Patent Owner's Preliminary Response. Patent Owner additionally filed an unredacted version of the Preliminary Response (Paper 29), designated as "Board and Parties Only."
[10] Paper 34 is a redacted version of Petitioner's Reply. Petitioner additionally filed an unredacted version of its Reply (Paper 65), designated as "Board and Parties Only."
[11] Paper 72 is the redacted version of the transcript. A complete confidential version of the transcript is included in the record at Paper 71.

IPR2015-01060
Patent 8,375,880 B1

### B. Related Proceedings

Petitioner and Patent Owner indicate that the '880 patent is the subject of the following co-pending federal district court case: *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:150-cv-00021 (E.D. Va.).[12]  Pet. 1; Paper 6, 2.

### C. The '880 Patent

The '880 patent is directed to a retractable step for a boat swim platform.  Ex. 1001, 1:17–18.  Figures 2 and 3 illustrate the retractable step, and are reproduced below.



Figure 2 is a perspective view of the retractable step with step 12 in a stored position.  *Id.* at 2:9–10.

---

[12] Both parties note that Patent Owner amended its complaint on February 23, 2015 to add Brunswick Corporation as a defendant.  Pet. 1; Paper 6, 2.

IPR2015-01060
Patent 8,375,880 B1



Figure 3 is a perspective view of the retractable step with step 12 in a
deployed position.  *Id.* at 2:11–12.

The retractable step includes step 12, base 14, movable arms 20a, 20b,
stationary arms 26a, 26b, and lock 34.  *Id.* at 2:26–3:6.  Base 14 includes
recess 17, which houses step 12 in the stored position.  *Id.* at 2:41–43.
Movable arms 20a, 20b are pivotally coupled to stationary arms 26a, 26b,
with movable arms 20a, 20b secured to step 12 and stationary arms 26a, 26b
secured to base 14.  *Id.* at 2:54–55, 63–65.  The pivotal coupling between
movable arms 20a, 20b and stationary arms 26a, 26b is illustrated in
Figure 4, reproduced below.



5

IPR2015-01060
Patent 8,375,880 B1

Figure 4 is an exploded view of the pivotal coupling between movable arm 20a and stationary arm 26a, and a sectional view of lock 34.

The '880 patent explains that "[b]olt 36, bushing 37, washers 38a and 38b, and nut 40 are used to pivotally couple moveable arm 20*a* and stationary arm 26*a* at aligned apertures 28*a* and 22*b*," and that "[a]rms 20*b* and 26*b* are pivotally coupled in a similar manner using bolt 23*b*." *Id.* at 3:10–14. Lock 34 includes hollow sleeve 42 secured to stationary arm 26*a* at lock aperture 27. *Id.* at 3:15–16. Spring 44 and pin 46 are located in sleeve 42, and spring 44 biases pin 46 in the locking position extending out of the end of sleeve 42. *Id.* at 3:17–18. The '880 patent notes that "[p]in head 48 at one end of pin 46 is of a size and shape that will allow a user to easily pull pin 46 into its unlocked position, i.e., within sleeve 42." *Id.* at 3:19–21.

### D. Illustrative Claims

As noted above, Petitioner challenges claims 1–6. Claims 1, 5, and 6 are independent claims, with claims 2–4 depending from claim 1. Claims 1, 5, and 6 are reproduced below:

> 1. A retractable step for use with a boat in water comprising:
>
>   a base having a recess;
>
>   a pair of stationary arms, each of said arms coupled with said base;
>
>   a pair of moveable arms, each of said moveable arms coupled with one of said stationary arms;
>
>   a step having a top side and an underside, said step coupled with said moveable arms and capable of being rotated 180° between a stored position within said recess, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and
>
>   a spring biased locking mechanism configured to hold at least

6

IPR2015-01060
Patent 8,375,880 B1

one of said moveable arms in a stationary position when said platform is in said deployed position and releasable to accommodate movement of said platform to said stored position.

Ex. 1001, 4:15–32.

5. A deployable swim step for use with a boat in water comprising:

a step having a top side and an underside;

means for coupling said step with the boat, said coupling means configured to permit rotation of said step 180° from a stored position above the water surface, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and

means for locking said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position.

*Id.* at 4:39–51.

6. A method of deploying a retractable step used with a boat in water, said method comprising:

providing a base having a recess;

providing a step having a top side and an underside, said step moveably coupled with said base and positioned within said recess when in a stored position, wherein said underside is exposed;

providing a spring biased locking mechanism to hold said step in said stored position;

disengaging said locking mechanism;

rotating said step 180° out of said recess and into a deployed position below the water surface, wherein said top side is exposed; and

reengaging said locking mechanism to hold said step in said deployed position.

*Id.* at 4:52–65.

IPR2015-01060
Patent 8,375,880 B1

## II.    ANALYSIS

### A. Claim Construction

Only those terms which are in controversy need to be construed, and only to the extent necessary to resolve the controversy. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). We construe the claims using the broadest reasonable construction in light of the '880 patent Specification. *See* 37 C.F.R. § 42.100(b). Applying that standard, we interpret the claim terms of the '880 patent according to their ordinary and customary meaning in the context of the patent's written description. *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). An inventor is entitled to be his or her own lexicographer of patent claim terms by providing a definition of the term in the specification with reasonable clarity, deliberateness, and precision. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). In the absence of such a definition, however, limitations are not to be read from the specification into the claims. *In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993).

Petitioner and Patent Owner propose specific constructions for several limitations. Pet. 9–19; Pet. Br. 1–5, 8–15; PO Resp. 9–19; PO Br. 1–14. We determine that only the following express constructions are required in order to reach our Decision.

### 1. "recess" (claims 1 and 6)

Claims 1 and 6 each recite "a base having a recess." Petitioner contends, for example, that "[t]he ordinary meaning of 'recess' encompasses an 'alcove' or 'indentation.'" Pet. 11 (citing Ex. 1013 (definition from Dictionary.com)). Petitioner notes that the preferred embodiment of the '880 patent "depicts a form-fitting recess into which step 12 fits to provide a

IPR2015-01060
Patent 8,375,880 B1

uniform level surface," but contends that "the claims are not limited to this preferred embodiment." *Id.* Accordingly, Petitioner contends that "a person of ordinary skill in the art at the time of the invention would determine that the broadest reasonable interpretation of 'recess' in light of the specification is: *an indentation or alcove*." Pet. 11.

Patent Owner responds that the "recess" recited in the claims requires "an alcove or indentation [] that corresponds in shape to the step such that the underside of the step lies flush with the top of the base to define a level surface when in the stored position." PO Resp. 12 (emphasis omitted). Patent Owner contends that the recitation in claims 1 and 6 that the step is "within the recess" with its "underside exposed" in the stored position requires that the recess is "configured to receive the step" and that "one of skill in the art understands that the purpose of the recess is to 'store' the step on the swim platform, which clears the platform of trip hazards and other obstacles." *Id.* at 11. Patent Owner also cites the Specification of the '880 patent as supporting its proposed construction. *Id.* at 15–16 (citing Ex. 1001, 1:55–62).

The plain language of the claim does not require any specific arrangement for the "recess" other than specifying that it houses the step in a stored position (i.e., the step is "within the recess" with its "underside exposed" in the stored position), and we are not persuaded that the cited portions of the Specification provide a special meaning for the term. *See, e.g.,* Ex. 1001, 1:55 (referring to "one embodiment"). We are apprised of no reason to depart from the plain and ordinary meaning of "recess" noted by Petitioner. Accordingly, we construe the "recess" recited in claims 1 and 6

IPR2015-01060
Patent 8,375,880 B1

as an alcove or indentation, without any further requirement that the alcove
or indentation be form-fitted to the step.

2. *"arm"* (claim 1)

Claim 1 requires "a pair of stationary arms" and "a pair of movable
arms." Petitioner contends that the "arms" should be construed as
projections. Pet. 11–12. Patent Owner responds that "[w]hile an arm may
be a projection, one skilled in the art—including Brunswick's own expert,
Dr. Garris—would not consider all projections (such as pivot pins and
hinges) to be arms." PO Resp. 12 (citing Ex. 2018, 208:23–209:10). Patent
Owner proposes that

> the broadest reasonable interpretation of "stationary arm" is: *an
> immobile structure projecting outwardly from the base and
> configured to be coupled with the moveable arms beyond the
> perimeter of the base*, and the broadest reasonable interpretation
> of "moveable arm" is: *a rotatable structure projecting outwardly
> from the step and configured to be coupled with the stationary
> arms beyond the perimeter of the step.*

*Id.* at 14. Our Decision on Institution provided a preliminary construction of
"arm" consistent with that proposed in the Petition (i.e., "the arms recited in
claim 1 encompass a projection"). Dec. 11. In view of the full record now
before us, we agree with Patent Owner that the preliminary construction was
overly broad. The additional limitations proposed in the Patent Owner
Response regarding the extent of the arms being "beyond a perimeter" of the
base or step, however, are overly narrow.

In order to assess adequately the proper construction of "arms," we
ordered additional briefing specifically directed to whether it would be
"reasonable to construe 'arm' as 'a slender part of a structure, machine or an
instrument projecting from a main part, axis, or fulcrum'?" and "[e]ven if we

IPR2015-01060
Patent 8,375,880 B1

were to maintain a construction of 'arm' as a projection, is it reasonable to require that projection to be something other than a pivot or a fastener?"  CC Order 2.  Petitioner contends that both proposals in our order are overly narrow, Pet. Br. 1–5, while Patent Owner agrees with both proposals, PO Br. 1–9.  Based on the record before us, we determine that although a projection may be an "arm," it would not be consistent with the Specification of the '880 patent to consider a pivot or a fastener, by itself, to be an "arm." During his deposition, Petitioner's declarant, Dr. Garris, even agreed that although "an arm is a projection . . . not all projections are arms."  Ex. 2018, 209:2–3.

Claim 1 recites that "each of said moveable arms [is] coupled with one of said stationary arms" and, as Patent Owner notes, the '880 patent distinguishes between its arms and the pivot coupling.  PO Br. 7 (citing Ex. 1001, 3:7–13).  The '880 patent describes movable arms 20a, 20b and stationary arms 26a, 26b, and separately describes a pivot coupling for those arms.  Ex. 1001, 2:53–3:14.  Petitioner contends that

> neither the ordinary meaning nor the intrinsic evidence mandate that coupling requires structure separate from the structure being coupled.  Accordingly, the broadest reasonable construction of "arms" that are "coupled" would encompass not **only** the preferred embodiment where the arms are **pivotally** coupled via two apertures and a bolt (Ex. 1001 at 3:12-13), but could also include coupling (the claim does not recite pivotally coupled) by broad means including welding, glue, a ball-and-socket joint, integral threading, a Morse taper (*see, e.g.*, U.S. Pats. 2,526,998 & 5,782,921), one arm with an aperture and the other with an integrated pivot or hook, or even magnetic attraction.

Pet. Br. 5.  Petitioner further contends that "[t]he arms disclosed in the '880 patent are both, as the disclosed coupling apertures (28) are part of the pivot structure, and the arms are part of the structure that fastens the step to the

Appx000011

IPR2015-01060
Patent 8,375,880 B1

boat." *Id.* We agree with Petitioner that a "pivot structure" may be *part* of an arm. Although a pivot structure could be *part of* an arm, however, that pivot structure *by itself*, cannot reasonably be considered an arm. Petitioner provides no persuasive argument to the contrary.

Accordingly, we determine that the term "arm" encompasses a projection, but that projection must be something more than simply a pivot coupling or fastener.

### 3. "exposed" (claims 1, 5, and 6)

Claims 1, 5, and 6 each recite that the underside of the step is "exposed" in the stored position and the top side of the step is "exposed" in the deployed position. Petitioner contends that "[t]he specification provides no special definition of 'exposed,'" and that "the ordinary meaning of 'exposed' encompasses 'unconcealed.'" Pet. 14 (citing Ex. 1022 (definition from Dictionary.com)). Patent Owner contends that "exposed" requires upward facing. PO Resp. 17–18. Patent Owner, however, fails to identify anything in the claims or the Specification of the '880 patent that imposes such a requirement, and at oral hearing acknowledged that it would be "fair" to characterize "exposed" as "just not covered." Tr. 59:21–25.

Based on the record before us, we agree with Petitioner that the broadest reasonable construction of "exposed" is unconcealed. We are not apprised of anything in the claims, the Specification, or the prosecution history that requires a construction of "exposed" different from the plain and ordinary meaning of that term.

### 4. "means for coupling said step with the boat" (claim 5)

Claim 5 recites "means for coupling said step with the boat." Petitioner acknowledges, and Patent Owner does not dispute, that this is a

IPR2015-01060
Patent 8,375,880 B1

means-plus-function limitation that should be construed in accordance with 35 U.S.C. § 112, ¶ 6.[13]  Pet. 17.  We agree.  Petitioner and Patent Owner disagree, however, as to the proper construction of this limitation.

A means-plus-function limitation "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6.  Petitioner contends that the structure corresponding to "means for coupling" is "a movable projection pivotally coupled with a stationary projection coupled with the base coupled to the boat, and equivalent structures thereof at the time of patent issuance."  Pet. 17 (emphasis omitted).  Patent Owner does not propose a specific construction in its Response and, instead, discusses the application of our preliminary construction of "means for coupling."  PO Resp. 57–60.  That preliminary construction determined that the broadest reasonable interpretation of "means for coupling" covers "the structure used to couple to the step to the boat[, which] includes movable arms 20a, 20b, stationary arms 26a, 26b, and the pivotal coupling (bolt 36, bushing 37, washers 38a, 38b, and nut 40) . . . and equivalent structures at the time of patent issuance."  Dec. 13–14.

The main dispute between the parties is whether the structure described in the '880 patent as corresponding to the "means for coupling" includes *two* (i.e., the pair of) movable arms 20a, 20b and *two* (i.e., the pair of) stationary arms 26a, 26b, as set forth in our Decision on Institution, or

---

[13]  Section 4(c) of the Leahy-Smith America Invents Act ("AIA") re-designated 35 U.S.C. § 112, ¶ 6, as 35 U.S.C. § 112(f).  Pub. L. No. 112-29, 125 Stat. 284, 296 (2011).  Because the '880 patent has a filing date before September 16, 2012 (effective date of § 4(c)), we will refer to the pre-AIA version of § 112.

IPR2015-01060
Patent 8,375,880 B1

only *a single one* of movable arms 20a, 20b and *a single one* of stationary arms 26a, 26b.  The parties do not dispute that at least one of movable arms 20a, 20b is required in the structure corresponding to the "means for coupling" in the '880 patent.  Pet. Br. 9–13; PO Br. 9–12.

Petitioner provides no persuasive explanation as to why only *a single one* of movable arms 20a, 20b and *a single one* of stationary arms 26a, 26b is required as part of the structure corresponding to the "means for coupling" in the '880 patent.  The Petition acknowledges that the Specification of the '880 patent "discloses that 'Movable arms 20a and 20b are each pivotally coupled with metal stationary arms 26a and 26b, which in turn are coupled with base 14.'"  Pet. 17 (quoting Ex. 1001, 2:63–65).  Without explanation, Petitioner concludes that "the broadest reasonable interpretation of 'means for coupling said step with the boat' in light of the specification is: *a movable projection pivotally coupled with a stationary projection coupled with the base coupled to the boat, and equivalent structures thereof at the time of patent issuance.*"  *Id.*  In its Reply, Petitioner also fails to offer any meaningful explanation, simply alleging that "[t]he proper broadest reasonable construction should not require **pairs** of arms because **each** arm is corresponding structure performing the recited function."  Pet. Reply 11 (citing *Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997)).

We agree with Patent Owner that the structure described in the Specification of the '880 patent as corresponding to the "means for coupling" clearly includes at least the pair of movable arms 20a, 20b and the pair of stationary arms 26a, 26b.  *See* Ex. 1001, 2:53–65.

14

IPR2015-01060
Patent 8,375,880 B1

### B. *Obviousness over Jaramillo and Curi*

Petitioner contends that claims 1, 3, and 6 would have been obvious over Jaramillo and Curi. Pet. 19–28. Patent Owner disagrees. PO Resp. 51–54. We have reviewed the Petition, the Patent Owner Response, and the relevant evidence discussed in those papers and are persuaded by Petitioner's contentions.

Claim 1 is directed to a "retractable step," and claim 3 depends from claim 1. Petitioner contends that Jaramillo teaches each limitation of claims 1 and 3, except the "spring-biased locking mechanism." Pet. 19–23, 25. Petitioner cites Curi for this limitation, *id.* at 19, 24–25, and contends that "Curi also expressly teaches one of ordinary skill to combine its locking mechanism with the retractable step of Jaramillo," *id.* at 25 (citing Ex. 1004, 1:21–23, 4:32–4). Claim 6 is directed to a method of operating a swim step, and the majority of Petitioner's contentions regarding claim 6 are similar to those regarding claim 1. *See id.* at 25–28.

With respect to this ground, Patent Owner's arguments are directed to whether Jaramillo teaches "a base having a recess" and "a step . . . capable of being rotated 180° between a stored position . . . wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed." PO Resp. 51–54. Patent Owner does not address specifically Petitioner's contentions regarding the other limitations recited in claim 1 or 6 or those recited in dependent claim 3, or Petitioner's rationale for combining the teachings of Jaramillo and Curi.

Jaramillo is directed to "a boat or watercraft step." Ex. 1003, 1:7. Petitioner contends that "[t]he entire boat of Jaramillo comprises the claimed base" and "[t]he rear of the boat includes the claimed recess, *i.e.*, an

IPR2015-01060
Patent 8,375,880 B1

*indentation or alcove*, which is shown by light green highlighting to Jaramillo Fig. 2." Pet. 20. Petitioner's annotated version of Figure 2 from Jaramillo, found on page 20 of the Petition, is reproduced below.



Petitioner's annotated version of Figure 2 from Jaramillo is a perspective view of a boat with a ladder mounted to the top of a rear platform of the boat, and includes Petitioner's labels of what it considers as corresponding to the recited "base" and "recess."

Patent Owner responds that "[o]ne of skill in the art would not consider the entire boat the 'base' as Brunswick has done here . . . because the claims of the '880 Patent distinguish between a 'boat' and a 'base.'" PO Resp. 52. In support of its position, Patent Owner notes that claim 2, which depends from claim 1, recites "said base is demountably coupled with the boat," and argues that claim differentiation requires the base and the boat to be different in claim 1. *Id.* This is not persuasive. The '880 patent explains that the base may be separate and demountable from the boat or integral with the boat. Ex. 1001, 3:22–28, 3:67–4:2. Indeed, claim 3, which Patent Owner fails to mention, even recites that "said base is integral with the boat." Accordingly, claim 1 (as well as claim 6) encompasses arrangements where the base is integral with the boat or separate from the boat, and we are persuaded that Jaramillo's boat defines an integral base as indicated on Petitioner's annotated version of Figure 2 from Jaramillo shown above.

16

IPR2015-01060
Patent 8,375,880 B1

Patent Owner additionally contends that Jaramillo does not teach the recited recess because "the ladder does not fit into, 'an alcove or indentation formed therein that corresponds in shape to the step.'"  PO Resp. 51–52. That contention is not persuasive because it requires a narrower construction of recess, which we specifically rejected above.

We are persuaded that Petitioner has established sufficiently that at least the rear of Jaramillo's boat corresponds to a base and defines an alcove or indentation (i.e., "a recess") as indicated on the annotated version of Jaramillo's Figure 2 shown above.

As for the "step . . . capable of being rotated 180°" (claim 1) and "rotating said step 180°" (claim 6), and the requirements of portions of the step being "exposed," Petitioner cites Figures 7 and 8 of Jaramillo.  Pet. 22–23, 27–28.  Petitioner provides annotated versions of Figures 7 and 8, which are reproduced below.



Petitioner's annotated version of Figure 7 from Jaramillo is a perspective view of the ladder in a stored position and includes blue highlighting on portions of the ladder steps.  Petitioner's annotated version of Figure 8 from

IPR2015-01060
Patent 8,375,880 B1

Jaramillo is a perspective view of the ladder in a deployed position and includes the blue highlighting from Figure 7, as well as yellow highlighting on portions of the ladder steps opposite the portions highlighted in blue.

Petitioner contends that "Jaramillo discloses rung 61, which is *a rest for a foot, the rest having opposing sides*, *i.e.*, the claimed step having a top side and an underside (highlighted in blue)." Pet. 22. Petitioner further contends that "[r]ung 61 is capable of being *rotated at least 180 degrees* between a stored position within the recess (highlighted in green in Fig. 7), and a deployed position, depicted in the shadow lines of Fig. 8." *Id.* Petitioner notes that "[a]n underside (highlighted in blue) of the step is *unconcealed*, *i.e.*, exposed, when in the stored position, and the opposing side (highlighted in yellow) is *unconcealed* when in the deployed position." *Id.* at 23.

Patent Owner responds by asserting that "exposed" requires the "exposed" surface to be facing upward. PO Resp. 53. As noted above in our discussion of claim construction, we do not read the claim as requiring any particular orientation for the surfaces of the step to be "exposed" and, instead, determine that "exposed" simply requires that a surface is not concealed. Under that construction, even if we consider the "top side" of the step to be the portion a user would step on and the "bottom side" to be the side opposite that "top side," we are persuaded that Jaramillo teaches such an arrangement. There does not appear to be any dispute, and Jaramillo's Figure 8 clearly shows, that the portion of its step a user would step on (the "top side") is exposed in the deployed position, and Figure 7 shows at least a portion of the opposite side being exposed in the stored position.

IPR2015-01060
Patent 8,375,880 B1

Patent Owner's additional contentions relate to Jaramillo's step being rotatable *beyond* 180 degrees. *Id.* at 53–54. Specifically, Patent Owner contends that the claim limits rotation of the step to no more than 180 degrees. PO Resp. 17. Patent Owner contends that "the '880 Patent specifically teaches the addition of a stop to prevent such rotation" and "one of ordinary skill in the art would not want the step of the '880 Patent to rotate past 180° because it would create a downward sloping surface in the water, rendering it more slippery and less stable for use by a boater." *Id.* We are not persuaded that the claim limits rotation to no more than 180 degrees. Rather, to meet the limitation, a step must be able to be rotated at least 180 degrees from the stored position. The plain language of the claims does not limit rotation of the step to 180 degrees. We are apprised of no other reason to limit the claim in that manner. Rather, the claims simply require that the step is "capable of being rotated 180°" (claim 1) or "rotating said step 180°" (claim 6). If a step is rotated more than 180 degrees, it necessarily has been rotated through 180 degrees. Patent Owner does not dispute, and we agree, that Jaramillo teaches over 180 degrees of rotation of its step, as is shown clearly in Figures 7 and 8.

As for the additional limitations not disputed by Patent Owner, we are persuaded by, and adopt, Petitioner's contentions that Jaramillo teaches stationary arms (depicted in purple in the annotated versions of Figures 7 and 8 above) and movable arms (depicted in orange in the annotated versions of Figure 7 and 8 above). *See* Pet. 21. We are also persuaded by, and adopt, Petitioner's contentions that Curi teaches a spring biased locking mechanism. *See id.* at 24; *see also* Ex. 1004, 3:61–62, 4:4–15, 4:18–20, Figs. 4, 4A, 5, 8. Petitioner's rationale for combining the teachings of Curi

IPR2015-01060
Patent 8,375,880 B1

with those of Jaramillo is also persuasive because, as Petitioner notes, Pet. 25, Curi expressly suggests using its locking mechanism with Jaramillo's swim step, Ex. 1004, 1:21–23, 4:32–34.

For the reasons set forth above, we are persuaded that Petitioner has established, by a preponderance of the evidence, that the features of claims 1, 3, and 6 are taught by the combination of Jaramillo and Curi and that one skilled in the art would have combined those teachings.

### C. Additional Grounds Based on Jaramillo and Curi

Petitioner additionally contends that claims 1, 3, and 6 would have been obvious over Jaramillo, Curi, and Bayliner (Ground 2), Pet. 28–34, and that claims 1, 3, and 6 would have been obvious over Jaramillo, Curi, Ord, and Terry (Ground 3), Pet. 34–38. Petitioner contends that "Ground 2 is relevant only if the Board determines that the broadest reasonable interpretation of 'recess' requires an indentation form-fitted to the step and/or the broadest reasonable interpretation of 'step having a top side and an underside' requires a flat step with flat sides," Pet. 28, and that "Ground 3 also is relevant only if the Board determines that the broadest reasonable interpretation of 'recess' requires an indentation form-fitted to the step and/or the broadest reasonable interpretation of 'step having a top side and an underside' requires a flat step with flat sides," Pet. 34. As indicated above, we do not construe those limitations as requiring the additional features noted by Petitioner.

We initially instituted trial on those additional grounds even though our preliminary constructions also did not require the additional features noted by Petitioner because those claim constructions were not final, and could change after institution of trial. *See* Dec. 21–22. Because this

IPR2015-01060
Patent 8,375,880 B1

Decision is final, and we do not construe those limitations as requiring the additional features noted by Petitioner, we need not reach those additional challenges.

### D. Obviousness over McCrea and Terleski

Petitioner contends that claims 1, 2, 4, and 6 would have been obvious over McCrea and Terleski. Pet. 38–47. We have reviewed the Petition, the Patent Owner Response, and the relevant evidence discussed in those papers. Based on the record now before us, we determine that Petitioner has failed to demonstrate, by a preponderance of the evidence, that claims 1, 2, 4, and 6 would have been obvious over McCrea and Terleski.

#### 1. Claims 1, 2, and 4

Petitioner cites McCrea for the majority of limitations recited in claims 1, 2, and 4, and additionally cites Terleski for the locking features recited in claim 1, as well as the additional limitations recited in dependent claims 2 and 4. *Id.* at 38–45. With respect to the "stationary arms" recited in claim 1, Petitioner cites McCrea's pins 10, which are illustrated in Figure 2 of McCrea, reproduced below. *Id.* at 40–41 (citing Ex. 1008, 2:31–32).

IPR2015-01060
Patent 8,375,880 B1



Figure 2 is a perspective view of McCrea's bumper assembly with the step in a deployed position. McCrea explains that "[a]rms H are pivotally supported at their upper ends by pins 10 that project outwardly from adjacent faces 12 of the reservoirs A–1 and A–2." Ex. 1008, 2:32–34.

Patent Owner contends that "one of ordinary skill in the art would not understand the pivot pin 10 of McCrea to be a 'stationary arm'" because "the pivot pin 10 is merely a fastener that extends transversely through the upper end of arms H and interior face of the bumper." PO Resp. 48–49 (citing 2051 ¶ 151). Patent Owner additionally points out that Petitioner's declarant, Dr. Garris, "agrees that the pivot pin merely acts as a fastener that sticks out only far enough to hold arm H in place and to allow it to rotate around the pin." *Id.* at 50 (citing Ex. 2018, 197:3–198:11). In its Reply, Petitioner does not respond to those contentions, other than addressing

22

IPR2015-01060
Patent 8,375,880 B1

Patent Owner's proposed constructions for "stationary arms" and "movable arms," generally.  *See* Pet. Reply 4–5, 12–18.

As noted above, we construe the "arms" recited in claim 1 as projections that are something more than simply a pivot coupling or fastener. In our order requesting additional briefing on claim construction, we authorized "the parties [to] use the briefing to address any impact a changed construction of 'arms' . . . may have on the challenges to claim[] 1."  CC Order 6.  In that briefing, however, Petitioner does not address how McCrea teaches "stationary arms" under that construction.  Pet. Br. 6–8.  Petitioner, instead, states that Terleski includes stationary arms.  Pet. Br. 7–8.  The challenge, however, relies on McCrea for that teaching.  *See* Pet. 40. Because McCrea's pivot pin 10 is nothing more than a pivot coupling or a fastener, Petitioner has failed to establish sufficiently that McCrea teaches "stationary arms" as required by claim 1.

### 2. *Claim 6*

Claim 6 requires "rotating said step 180° out of said recess and into a deployed position below the water surface, wherein said top side is exposed."  In its challenge to claim 6 based on the combination of McCrea and Terleski, Petitioner contends that this limitation is "[d]isclosed by McCrea."  Pet. 46 (citing Ex. 1008, 3:14–16, Figs. 1, 2).  Petitioner also directs us to "[s]ee discussion of limitation [1e] under Ground 4 above."  *Id.* (citing Ex. 1012 ¶ 105).  The discussion of "limitation [1e]" referenced by Petitioner contends that "'[b]elow the water surface' does not define the claimed *apparatus* and so does not limit the claim."  *Id.* at 42 (emphasis added).  This contention does not apply to claim 6, which recites a *method* requiring rotating the step below the water surface.  Petitioner further

IPR2015-01060
Patent 8,375,880 B1

contends, however, that "it would be obvious to one of ordinary skill in the art to utilize this structure on a watercraft so that the step extended below the water surface, based on the teachings of Terleski or other references." *Id.* (citing Ex. 1012 ¶ 94).  The cited portions of the Garris Declaration simply repeat what is included in the Petition: that "it would be obvious to one of ordinary skill in the art to utilize this structure on a watercraft so that the step deployed below the water surface, based on the teachings of Terleski or other references."  Ex. 1012 ¶¶ 94, 105.

In our Decision on Institution, we made a preliminary determination that it was reasonably likely that one skilled in the art would have found it obvious to use McCrea's step on a watercraft (or on some other structure) in a manner such that the step would be below the surface of water in a deployed position.  Dec. 25.  Patent Owner disputes that determination, and responds that neither McCrea nor Terlski teach this limitation, "[n]or has [Petitioner] presented any argument that would suggest such a modification of the references."  PO Resp. 47.  Patent Owner further notes that there is "*no* explanation nor identification of 'other references' that allegedly support [Petitioner's] obviousness position."  *Id.*

There appears to be no dispute, and we agree, that McCrea does not teach this limitation itself, as that reference is directed to a terrestrial vehicle with no mention of water.  As for Terleski, Patent Owner contends that its swim platform is not designed to go below the surface of water and, instead, that swim platform is actually maintained above the water surface.  *Id.*  In its Reply, Petitioner does not dispute Patent Owner's contentions and, instead, argues that "using a step on a boat in that manner . . . was well known and obvious."  Pet. Reply 17 (citing Ex. 1012 ¶¶ 94, 99; Ex. 2018 234:25–

IPR2015-01060
Patent 8,375,880 B1

235:6).  Petitioner further contends that "[t]his conventional limitation is satisfied based on the knowledge of a person of skill in the art."  *Id.* (citing *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1173 (Fed. Cir. 2015)).  The Petition, however, did not allege that the limitation was a conventional one, satisfied based on the knowledge of a person skilled in the art.  Rather, the Petition relied on the teaching being found in "Terleski or other references."  Pet. 42.

Petitioner offers no explanation as to how Terleski teaches this feature, nor does Petitioner even identify what these "other references" are. Petitioner's new reliance on "the knowledge of a person skilled in the art" is improperly raised for the first time in its Reply.  Nothing is identified as necessitating this new argument other than deficiencies in the Petition. Nevertheless, even if we were to consider that argument, it fails because it is based solely on Dr. Garris' conclusion that such a feature would have been obvious with no further support.  *See*, *e.g.*, Ex. 1012 ¶ 105 (stating that "it would be obvious to one of ordinary skill in the art to utilize this structure on a watercraft so that the step deployed below the water surface, based on the teachings of Terleski or other references").

### 3.  Summary

Based on the record before us, we determine that Petitioner has failed to establish, by a preponderance of the evidence, that claims 1, 2, 4, and 6 would have been obvious over McCrea and Terleski.

### E. Anticipation by Suiter

Petitioner contends that claim 5 is anticipated by Suiter.  Pet. 47–51. We have reviewed the Petition, the Patent Owner Response, and the relevant evidence discussed in those papers.  Based on the record now before us, we

IPR2015-01060
Patent 8,375,880 B1

determine that Petitioner has failed to demonstrate, by a preponderance of the evidence, that claim 5 is anticipated by Suiter.

Petitioner cites Suiter as disclosing each limitation of claim 5. *Id.* Claim 5 requires "means for coupling said step with the boat." As noted above, the structure described in the Specification of the '880 patent as corresponding to the "means for coupling" includes at least the pair of movable arms 20a, 20b and the pair of stationary arms 26a, 26b. Petitioner cites Suiter's post 24 and brackets 18 as the structure corresponding to the "means for coupling" described in the '880 patent (at least as the structure corresponding to the arms). Pet. 48–49. Petitioner concludes that, accordingly, "Suiter discloses structure that is *a movable projection pivotally coupled with a stationary projection coupled with the base coupled to the boat, and equivalent structures thereof at the time of patent issuance.*" *Id.* (citing Ex. 1012 ¶¶ 110–111).

Patent Owner responds that Suiter's post 24 is not a *pair* of movable arms. PO Resp. 59. We agree with Patent Owner that a single post (e.g., Suiter's post 24) is not a pair of arms. Accordingly, Petitioner has failed to establish that Suiter discloses the structure from the '880 patent corresponding to the "means for coupling." Next, we turn to whether Suiter discloses an equivalent of that structure.

Although the Petition does not address whether equivalent structure is disclosed in Suiter, *see* Pet. 48–50, Patent Owner responds that "one of ordinary skill in the art would not view [Suiter's] post 24 as an equivalent" to the pair of movable arms 20a, 20b in the '880 patent, PO Resp. 59. In order to be an equivalent, there must be insubstantially different structure. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)

IPR2015-01060
Patent 8,375,880 B1

("the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification").  In support of its position, Patent Owner explains that "the post [in Suiter] does not support the step in the same manner as do the arms of the '880 Patent" and that "if one of ordinary skill applied the bracket and post to the '880 Patent, the post would have to be connected to and support the center portion of the step . . . [and] a sizeable plate (or brace) would need to be placed along the bottom side of the step for stability."  PO Resp. 59–60 (citing Ex. 2051 ¶¶ 195–197).  As noted above, Exhibit 2051 is the testimony of Patent Owner's Declarant, Mr. Breen, and the cited portions support Patent Owner's position that Suiter's structure, including the single movable arm (post 24), is a substantially different structure.  *See*, *e.g.*, Ex. 2051 ¶ 197 ("If one of ordinary skill in the art were to apply the bracket and post of Suiter . . . there would need to be a sizeable plate, or brace placed along the bottom side of the step (in the center) to make the step stable.").

Although Petitioner's Reply states that "Suiter's structure is certainly equivalent and thus within the scope of the limitation," it offers little support for its position.  Pet. Reply 11–12.  Petitioner acknowledges that "[s]tructural equivalence under § 112, ¶ 6 is met when the differences are insubstantial."  *Id.* at 11 (citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)).  Petitioner provides no reason, however, for us to find that using a single arm would not require the additional structure suggested by Mr. Breen noted above.  In fact, Petitioner does not appear even to dispute that such structure would be required.  Weighing the evidence before us, Petitioner has failed to establish sufficiently that a single

27

IPR2015-01060
Patent 8,375,880 B1

movable arm is insubstantially different from the structure described in the
'880 patent.

Accordingly, we are not persuaded that Suiter discloses structure
equivalent to that in the '880 patent corresponding to the "means for
coupling."

## F. Secondary Considerations

As part of our obviousness analysis, we consider the evidence and
arguments submitted by Patent Owner regarding secondary considerations of
non-obviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18
(1966). To be relevant, evidence of non-obviousness must be commensurate
in scope with the claimed invention. *In re Kao*, 639 F.3d 1057, 1068 (Fed.
Cir. 2011). There must be a nexus between the merits of the claimed
invention and the evidence of secondary considerations. *In re GPAC Inc.,*
57 F.3d 1573, 1580 (Fed. Cir. 1995). "Nexus" is a legally and factually
sufficient connection between the objective evidence and the claimed
invention, such that the objective evidence should be considered in
determining non-obviousness. *Demaco Corp. v. F. Von Langsdorff
Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).

Patent Owner contends that "objective indicia related to commercial
success, copying, long-felt but unsolved needs, and failure of others,
presented herein establishes the patentability of the challenged claims." PO
Resp. 23.

### 1. Copying

Patent Owner alleges that Petitioner copied the claimed invention (i.e.,
Patent Owner's swim step). *Id.* at 23–26. "[C]opying requires the
replication of a specific product." *Iron Grip Barbell Co. v. USA Sports, Inc.*,

IPR2015-01060
Patent 8,375,880 B1

392 F.3d 1317, 1325 (Fed. Cir. 2004).  In support of its allegations of
copying, Patent Owner contends that

> Brunswick admits that it knew of the Cobalt Swim Step feature
> before it began designing its own Swim Step, that the Cobalt
> Swim Step influenced Brunswick to design its Swim Step, and
> that it consulted or reviewed at least one Cobalt Swim Step both
> prior to and during the design process which began in March
> 2012.

PO Resp. 24.  Petitioner responds that rather than copying, it made a
concerted effort to *avoid* copying, including design-around efforts to avoid
Patent Owner's locking mechanism.  Pet. Reply 22–23.

Claims 1, 3, and 6 each require a "spring biased locking mechanism."
Patent Owner does not dispute that Petitioner's swim step, which is
allegedly the result of copying Patent Owner's swim step, fails to include
this feature.  *See* PO Resp. 26 (noting that Petitioner "claims its Swim Step
does not have a locking mechanism" and "that [Petitioner] says it
consciously avoided [that feature]," without disputing those contentions).
Patent Owner fails to direct us to any authority that supports its position that
copying can be established when an alleged copier intentionally avoids
copying (i.e., purposefully does not include claimed features).

Nevertheless, even if we were to accept Patent Owner's allegations of
copying, they would not outweigh the case of obviousness for claims 1, 3,
and 6 based on the combination of Jaramillo and Curi.  In that combination,
Petitioner cites Jaramillo as teaching each of the features recited in claims 1,
3, and 6, other than the "spring biased locking mechanism."  As explained
above, the "spring biased locking mechanism" is the very feature that
Petitioner sought to exclude from its design.  Accordingly, the allegedly

29

IPR2015-01060
Patent 8,375,880 B1

"copied" portions of the claims are found in a single embodiment of a single prior art reference.

### 2. Commercial Success

Patent Owner alleges that evidence of commercial success weighs against a determination of obviousness of claims 1, 3, and 6. PO Resp. 25–32. Patent Owner relies on evidence of commercial success of both its swim step, *id.* at 27–29, as well as Petitioner's swim step, *id.* at 29–30.

### a. Patent Owner's Swim Step

The only discussion provided in Patent Owner's Response as to how its swim step includes the features recited in claims 1, 3, and 6 is a general allegation that "[t]he Cobalt Swim Step is offered on various Cobalt boats, is described by the '880 Patent, and includes every limitation recited in Claims 1–5 of the '880 Patent." *Id.* at 23 (citing Ex. 2019 ¶¶ 4–6; Ex. 2051 ¶¶ 166–69). Paragraph 169 of the Breen Declaration (Ex. 2051) references Exhibit 2049, which is a claim chart mapping Patent Owner's swim step to various claim elements. Initially, we note that such an incorporation by reference is inappropriate and Patent Owner's contentions regarding commercial success fail for this reason alone, as Patent Owner's Response fails to tie its swim step to the features of the claims. *See* 37 C.F.R. § 42.6(a)(3) ("Arguments must not be incorporated by reference from one document into another document.").

Furthermore, we are not persuaded that Petitioner has established the required nexus between the alleged commercial success and the claimed invention. "Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success." *Ormco Corp. v. Align Tech., Inc.*,

IPR2015-01060
Patent 8,375,880 B1

463 F.3d 1299, 1311–12 (Fed. Cir. 2006). In some instances, there may be a presumption of nexus. *See WBIP, LLC v. Kohler Co.*, No. 2015-1038, 2016 WL 3902668, at *6 (Fed. Cir. July 19, 2016) ("[T]here is a presumption of nexus for objective considerations when the patentee shows that the asserted objective evidence is tied to a specific product and that product 'is the invention disclosed and claimed in the patent.'"). Patent Owner contends, at least for its swim step, that such a presumption is appropriate in this case. PO Resp. 27. We disagree.

Claims 1, 3, and 6 are each directed to a swim step (or method of operating a swim step), and Patent Owner provides information regarding sales for its *boats* that include the swim step, rather than sales information for *swim steps individually*. *See* PO Resp. 28–29. A limited exception to the presumption of nexus exists where the patented invention is only a component of the product to which the asserted objective considerations are tied. *Demaco*, 851 F.2d at 1392. Here, the swim step is a component of the boat. Accordingly, Patent Owner enjoys no presumption of nexus. Petitioner contends that Patent Owner offers no meaningful discussion of nexus. Pet. 20–21. We agree. Indeed, Patent Owner simply alleges that sales of *boats* with swim steps have increased year-over-year without explaining why the claimed features of the swim step are responsible for the increase in sales. *See, e.g.*, PO Resp. 28–29.

Furthermore, even if nexus were established, Patent Owner does not provide information regarding sales volume or market share as compared to providers of competing products. Rather, Patent Owner offers evidence of its own sales. *See id.* This information, without market share information, is

IPR2015-01060
Patent 8,375,880 B1

only weak evidence, if any, of commercial success.  *See In re Applied Materials, Inc.*, 692 F.3d 1289, 1299 (Fed. Cir. 2012).

### b.  Petitioner's Swim Step

Initially, we note that there is no discussion directed to how Petitioner's swim step includes the features recited in claims 1, 3, or 6 of the '880 patent in Patent Owner's contentions regarding commercial success. *See* PO Resp. 29–32.  Patent Owner, instead, appears to rely on its allegations of copying discussed above.  As noted above, however, Patent Owner has not established that Petitioner's swim step includes the "spring biased locking mechanism" required by claims 1, 3, and 6.  Patent Owner fails to establish the requisite nexus between Petitioner's sales and the claimed invention.  Also, similar to the deficiencies regarding its allegations of commercial success of its own swim step, Patent Owner fails to provide any information regarding market share when discussing Petitioner's alleged commercial success.  *See* PO Resp. 29–30.  In fact, Patent Owner makes no mention of Petitioner's sales, noting only that "25% to 35% of [Petitioner's] boats ordered include the option."  *Id.* at 29.

### c.  Licensing

In its discussion of alleged commercial success, Patent Owner additionally contends that it "has been approached by two of its direct competitors requesting [] a license."  *Id.* at 32.  Patent Owner offers no further argument or evidence on this issue.  This contention is also unpersuasive.  Although licenses taken under the patent in suit may constitute evidence of non-obviousness, only little weight can be attributed to such evidence if the patentee does not demonstrate "a nexus between the

IPR2015-01060
Patent 8,375,880 B1

merits of the invention and the licenses of record." *In re GPAC Inc.*, 57 F.3d at 1580 (internal quotation and citations omitted).

### 3. *Industry Praise*

Patent Owner alleges that industry praise supports a determination of non-obviousness. PO Resp. 33. As with commercial success, evidence of industry praise is only relevant when it is directed to the merits of the invention claimed. *See Ormco*, 463 F.3d at 1311. Patent Owner, however, offers no explanation as to how any of the alleged praise is due to specific features that are present in the claims.

### 4. *Long-Felt Need and Failure of Others*

Patent Owner alleges that long-felt need and failure of others supports a determination of non-obviousness. PO Resp. 33–38. To show a long-felt need, Patent Owner must introduce evidence to show when such a need first arose and how long this need was felt, and must introduce evidence to show that this need was met by the patented invention. *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009). "[L]ong-felt need is analyzed as of the date of an articulated identified problem and evidence of efforts to solve that problem." *Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993).

In support of its contentions regarding long-felt need, Patent Owner initially notes that "many of the references cited by the Petitioner are quite old (McCrea is over forty years old)." PO Resp. 33. This, by itself, is unpersuasive. *See Iron Grip Barbell Co. v. USA Sports, Inc.,* 392 F.3d 1317, 1325 (Fed. Cir. 2004) ("Absent a showing of long-felt need or the failure of others, the mere passage of time without the claimed invention is not evidence of nonobviousness."). Patent Owner further contends that

IPR2015-01060
Patent 8,375,880 B1

> [t]here has been a long-felt need recognized by designers and
> manufacturers in the recreational boating industry for a manually
> operable feature or device that would provide a more
> aesthetically pleasing and user friendly way for boaters (and their
> pets) to get into and out of the water from boats that dates back
> at least to 1971, and likely further.

PO Resp. 33–34 (citing Ex. 2019 ¶ 11; Ex. 2051 ¶¶ 154–165). Patent Owner notes complaints about traditional folding ladders and drawbacks of hydraulic platforms. *Id.* at 34–35. Patent Owner additionally contends that Petitioner failed to develop an alternative to its swim step. *Id.* at 36–38.

Patent Owner has failed to establish sufficiently a long-felt need for the claimed swim step. Patent Owner characterizes the need as being for "a more aesthetically pleasing and user friendly way for boaters (and their pets) to get into and out of the water from boats," but at the same time acknowledges that hydraulic platforms already existed. *See* PO Resp. 33–35. Patent Owner fails to explain persuasively how these hydraulic platforms failed to meet that need. Patent Owner's allegation of failure by others fails for reasons similar to its allegation of long-felt need.

### G. Summary

Weighing all of the evidence before us, Patent Owner's contentions regarding secondary considerations of non-obviousness do not overcome the strong case of obviousness of claims 1, 3, and 6 over Jaramillo and Curi. Accordingly, we are persuaded that Petitioner has established, by a preponderance of the evidence, that claims 1, 3, and 6 would have been obvious over Jaramillo and Curi.

IPR2015-01060
Patent 8,375,880 B1

## III.    MOTION TO AMEND

Patent Owner moves to substitute claims 7–12 for claims 1–6, respectively, if we determine claims 1–6 to be unpatentable.  MTA 1. Because we determine that Petitioner has established, by a preponderance of the evidence, that claims 1, 3, and 6 are unpatentable, but not that claims 2, 4, and 5 are unpatentable, Patent Owner's motion to substitute claims 7, 9, and 12 for claims 1, 3, and 6 is before us.

*A. Proposed Substitute Claims*

Proposed substitute claims 7 and 12 are independent, and are reproduced below.

7. A retractable step for use with a boat in water comprising:

a base <u>on a boat, said base</u> having <u>an upper, upward facing surface with</u> a recess formed therein;

a pair of stationary arms, each of said arms coupled with said base <u>and extending outwardly from said base to a second end beyond the perimeter of said base</u>;

a pair of moveable arms, each of said moveable arms coupled with <u>the second end of</u> one of said stationary arms;

a <u>flat</u> step having a top side and an underside <u>when in a deployed position, said top side and underside defining opposed surfaces that are each configured to support a seated user</u>, said step coupled with said moveable arms and capable of being rotated 180° <u>to flip the step</u> between a stored position within said recess, wherein said underside <u>surface</u> is exposed <u>and positioned facing up</u>, and a deployed position below the water surface, wherein said top side <u>surface</u> is exposed <u>and positioned facing up</u>;

<u>wherein said recess corresponds in shape to said step such that said underside surface lies flush with the upper surface of said base to define a level surface when said step is in the stored position;</u> and

a spring biased locking mechanism configured to hold at

35

IPR2015-01060
Patent 8,375,880 B1

> least one of said moveable arms in a stationary position when said platform is in said deployed position and releasable to accommodate movement of said platform to said stored position.

MTA 1–2.

> 12. A method of deploying a retractable step used with a boat in water, said method comprising:
>
> > providing a base on a boat having an upper, upward facing surface with a recess formed therein;
> >
> > providing a flat step having a top side and an underside when in a deployed position, said top side and underside defining upper and lower opposed surfaces that are each configured to support a seated user, said step moveably coupled with said base and positioned within said recess when in a stored position, wherein said underside surface is exposed and positioned facing up;
> >
> > providing a spring biased locking mechanism to hold said step in said stored position;
> >
> > disengaging said locking mechanism;
> >
> > rotating said step 180° to flip the step out of said recess and into a deployed position below the water surface, wherein said top side surface is exposed and positioned facing up;
> >
> > reengaging said locking mechanism to hold said step in said deployed position.

*Id.* at 4–5.

> *B. Analysis*

As the moving party, Patent Owner has the burden to establish it is entitled to the requested relief. 37 C.F.R. § 42.20(c); *MasterImage 3D, Inc. v. RealD Inc.*, Case IPR2015-00040, slip op. at 4 (PTAB July 15, 2015) (Paper 42) (precedential) (indicating a patent owner, as movant, bears "the ultimate burden of persuasion . . . to demonstrate the patentability of the amended claims"); *see Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1306 (Fed. Cir. 2015) (indicating 37 C.F.R. § 42.20(c) is "plainly applicable

IPR2015-01060
Patent 8,375,880 B1

to motions to amend filed during [*inter partes* reviews]"); *but see In re Aqua Prods.*, No. 2015-1177, 2016 WL 4375651, at *1 (Fed. Cir. Aug. 12, 2016) (order granting rehearing *en banc* to address burdens of persuasion and production regarding motions to amend under 35 U.S.C. § 316(d) and vacating *In re Aqua Prods.*, 823 F.3d 1369 (Fed. Cir. 2016)).  At a minimum, Patent Owner has the burden of showing that (1) the substitute claims are patentable over the prior art asserted against claims 1, 3, and 6 in the instituted challenges and (2) its request meets all the procedural requirements concerning motions to amend set forth, for example, in our rules, *Idle Free Sys., Inc. v Bergstrom, Inc.*, Case IPR2012-00027 (PTAB June 11, 2013) (Paper 26) (informative), and *MasterImage 3D, Inc. v. RealD Inc.*, Case IPR2015-00040 (PTAB July 15, 2015) (Paper 42) (precedential).

We are persuaded that Patent Owner has satisfied the procedural requirements set forth in our rules.  We disagree with Petitioner's contention that the amended claims are not supported by the written description of the '880 patent.  MTA Opp. 2–3.  Petitioner contends that a number of features are not supported by the original disclosure, including the step having surfaces "configured to support a seated user" and that the step is capable to being rotated 180 degrees "to flip the step."  *Id.* at 2–3.  With respect to the surfaces of the step being "configured to support a seated user," however, Petitioner acknowledges that "the specification discloses that the surfaces may be used for sitting."  *Id.* at 2.  Furthermore, the '880 patent explicitly states that in the stored position "the underside of step 12 is flush with the top surface of base 14, thus restoring full functionality to base 14 as a platform with a level surface that may be used for standing, sitting, or storage," Ex. 1001, 3:47–50, and "[w]hen in the deployed position, step 12

IPR2015-01060
Patent 8,375,880 B1

provides a seat on which swimmers may rest while partially submerged in the water," *id.* at 3:61–64.  As for the ability to "flip the step," we are apprised of no reason why that is not disclosed by at least the illustration in Figures 2 and 3 of the '880 patent, which shows the stored and deployed positions of the step.

Although we are satisfied that Patent Owner has met the procedural requirements set forth in our rules, we are not persuaded that Patent Owner has met its burden of showing that substitute claims 7, 9, and 12 are patentable.[14]  For example, the Petition asserted the combination of McCrea and Terleski as rendering original claims 1, 3, and 6 obvious, and cited McCrea for the majority of features recited in claims 1 and 6.  Pet. 38–47.  Although we determined that Petitioner had not established unpatentability of claims 1, 3, and 6 (for which claims 7, 9, and 12 are substitutes) over McCrea and Terleski, that does not mean those claims are patentable over those references.  Rather, we simply determined that Petitioner had not met *its burden* of establishing unpatentability of those claims.  As noted above, in a Motion to Amend, the burden is on Patent Owner.

In its Motion to Amend, Patent Owner does not dispute that McCrea teaches the features of substitute claims 7 and 12, other than the base being on a boat and the stationary arms that extend beyond and below the base.  MTA 11–15.  For those features not disputed, Patent Owner's analysis with respect to McCrea rests on McCrea allegedly being non-analogous art.  *See* MTA 12–13.  The Motion to Amend, however, offers no analysis as to why McCrea is non-analogous art.  *See id.* at 12 (simply concluding that Patent

---

[14] Patent Owner's Motion to Amend fails to address patentability of claim 9 separately.

IPR2015-01060
Patent 8,375,880 B1

Owner "maintains its position that McCrea is not analogous art"); *see also
id.* at 13 (again stating only that Patent Owner "maintains its position that
McCrea is not analogous art," while citing 28 paragraphs of the Breen
Declaration without further explanation).  In its Motion to Amend, Patent
Owner never characterizes the field of endeavor or the problem addressed by
the '880 patent.  To the extent Patent Owner implies that we should look to
its arguments related to whether McCrea is analogous art in its Patent Owner
Response because it "maintains the position," we note that this is an
improper incorporation by reference.  *See* 37 C.F.R. 42.6(a)(3).  This
argument fails for that reason alone.  Moreover, to the extent we were to
consider the portions of Patent Owner's Response addressing whether
McCrea is analogous art, that discussion is ultimately one regarding whether
Petitioner had met *its burden* in establishing McCrea as analogous art.  *See*
PO Resp. 42 ("[Petitioner] has not provided any evidence or information that
validates an assertion—much less meets its burden—that McCrea is
analogous prior art with respect to the '880 Patent.").  Indeed, in its Patent
Owner Response, Patent Owner also fails to characterize the field of
endeavor or the problem addressed by the '880 patent.  Accordingly, Patent
Owner has failed to establish that McCrea is non-analogous art.

 With respect to the base being on a boat, Patent Owner fails to offer
*any* explanation as to why one skilled in the art would not have found it
obvious to use McCrea's arrangement on a boat.  *See* MTA 14 (stating that
"[t]his [base on a boat] limitation distinguishes from McCrea" without
further explanation).  The same is true for the "stationary arms . . . extending
outwardly from said base to a second end beyond the perimeter of said base"

IPR2015-01060
Patent 8,375,880 B1

recited in substitute claim 7.[15]  In addressing that limitation relative to
McCrea, Patent Owner simply states that "[t]his limitation has been included
to distinguish over the pivot pin 10 of McCrea asserted in the Petition to be a
stationary arm." *Id.*  There is no discussion as to why this results in a
patentable substitute claim.  Petitioner points out these shortcomings, as well
as others, and cites additional references not addressed in Patent Owner's
Motion to Amend to further support its contentions regarding unpatentability
of the challenged claims.  MTA Opp. 8–20.

In Response to Petitioner's Opposition, with respect to McCrea,
Patent Owner offers no further argument as to why one skilled in the art
would not include McCrea's step on a boat, and does not dispute that a
number of additional references cited by Petitioner include stationary arms
as recited in the substitute claims.  MTA Reply 9–10.  Rather, Patent Owner
focuses on why one skilled in the art would not add stationary arms from
those additional references into McCrea.  *Id.*  Patent Owner, however,
misses the point.  The question of patentability is not whether one skilled in
the art would bodily incorporate an element from one reference into another,
but whether the combined teachings of references render the claimed
arrangement obvious.  *See In re Keller*, 642 F.2d 413, 425 (CCPA 1981).
Patent Owner fails to establish persuasively that one skilled in the art would
not find the arrangement of the substitute claims obvious in view of at least
the combination of McCrea and any one of the numerous other references
cited by Petitioner, and acknowledged by Patent Owner, that teach stationary
arms.

---

[15] We note that this feature is not included in substitute claim 12.

IPR2015-01060
Patent 8,375,880 B1

In support of the patentability of the proposed substitute claims,
Patent Owner additionally contends that it

> presented evidence of long-felt unmet need, commercial success
> and copying tied specifically to the amended claim limitations –
> a *flat* step having opposing side surfaces *configured to support a
> seated user*, a seat that *flips* from one side *positioned facing up*
> to the other, a seat that fits *flush* into a recess resulting in a *level
> surface*.

MTA Reply 12. But Patent Owner provides no meaningful discussion of
these secondary considerations of non-obviousness in its Motion to Amend
or its Reply to Petitioner's Opposition to the Motion to Amend. In fact,
Patent Owner does not even reference these secondary considerations in its
Motion to Amend. Patent Owner's Reply to Petitioner's Opposition simply
includes the general statement above, and proceeds to cite large portions of
the record. We need not determine whether it is appropriate for Patent
Owner to raise this issue for the first time in its Reply, as Petitioner
contends, MTA Sur-reply 5–6, because that general discussion insufficient.
Again, we note that Patent Owner has the burden to establish patentability of
the substitute claims, and its failure to offer *any* explanation to support its
allegations regarding secondary considerations relative to the proposed
substitute claims is fatal to those contentions.

Accordingly, Patent Owner has failed to meet its burden to establish
patentability of the proposed substitute claims. In view of that
determination, we need not reach Petitioner's additional contentions that a
number of limitations in the substitute claims are indefinite.

IPR2015-01060
Patent 8,375,880 B1

## IV.    MOTIONS TO EXCLUDE

Petitioner and Patent Owner each filed motions to exclude evidence in this proceeding.  Paper 46 ("Pet. MTE"); Paper 50 ("PO MTE").

### A.  Petitioner's Motion to Exclude

Petitioner moves to exclude portions of Exhibit 2094 (the Declaration of Kevin Breen in support of Patent Owner's Motion to Amend), certain articles relied upon by Patent Owner (Exhibits 2003–2005, 2028, and 2029), as well as certain exhibits relied upon in Patent Owner's Preliminary Response, but not relied upon in Patent Owner's Response (Exhibits 2001–2013).  Pet. MTE 1.  Petitioner's motion is moot with respect to the Declaration of Kevin Breen because even considering the portions of that Declaration relied on in Patent Owner's Papers, we find in favor of Petitioner in denying Patent Owner's Motion to Amend.  Petitioner's motion is also moot with respect to Exhibits 2001–2013, as those exhibits are not relied upon in Patent Owner's post-institution filings or our Decision.  Petitioner's motion is also moot with respect to Exhibits 2028 and 2029, as Patent Owner's arguments directed to industry praise also fail even considering those exhibits.

Accordingly, Petitioner's Motion to Exclude is denied as moot.

### B.  Patent Owner's Motion to Exclude

Patent Owner seeks to exclude portions of the deposition testimony of Paxson St. Clair.  PO MTE 2–3.  Patent Owner's motion is moot, as that testimony is not relied upon in reaching our Decision.

Accordingly, Patent Owner's Motion to Exclude is denied as moot.

IPR2015-01060
Patent 8,375,880 B1

## V.    CONCLUSION

For the foregoing reasons, we determine that Petitioner has established, by a preponderance of the evidence, that claims 1, 3, and 6 of the '880 patent are unpatentable, but has failed to establish that claims 2, 4, and 5 are unpatentable.  Patent Owner has failed to establish patentability of proposed substitute claims 7, 9, and 12.

## VI.    ORDER

For the reasons given, it is

ORDERED that claims 1, 3, and 6 of the '880 patent are unpatentable;

FURTHER ORDERED that Patent Owner's Motion to Amend is denied;

FURTHER ORDERED that Petitioner's Motion to Exclude is denied as moot;

FURTHER ORDERED that Patent Owner's Motion to Exclude is denied as moot; and

FURTHER ORDERED that parties to the proceeding seeking judicial review of this Final Written Decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

PETITIONER:

Aaron T. Olejniczak
aarono@andruslaw.com

Christopher R. Liro
chris.liro@andruslaw.com

IPR2015-01060
Patent 8,375,880 B1

PATENT OWNER:

Penny R. Slicer
penny.slicer@stinsonleonard.com

B. Scott Eidson
scott.eidson@stinsonleonard.com

44



US008375880B1

(12) **United States Patent**

St. Clair, Jr. et al.

(10) **Patent No.:**    **US 8,375,880 B1**

(45) **Date of Patent:**    **Feb. 19, 2013**

(54) **RETRACTABLE STEP FOR BOAT SWIM PLATFORM**

(75) Inventors: **William Paxson St. Clair, Jr.**, Leawood, KS (US); **Timothy W. Kaiser**, Independence, KS (US); **Bret A. Chilcott**, Neodesha, KS (US); **Sean P. Callan**, Owasso, OK (US)

(73) Assignee: **Cobalt Boats, LLC**, Neodesha, KS (US)

( * ) Notice:    Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 312 days.

(21) Appl. No.: 12/822,564

(22) Filed:    **Jun. 24, 2010**

(51) Int. Cl.
    *B63B 17/00*    (2006.01)

(52) **U.S. Cl.** .......................................... **114/362**; 182/84

(58) **Field of Classification Search** .................. 114/362; 182/84, 88; 14/69.5, 71.1
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,293,967 A * | 10/1981 | Ord | 114/362 |
| 4,462,485 A | 7/1984 | Terry et al. | |
| 4,495,883 A | 1/1985 | Hoy | |
| 4,669,414 A | 6/1987 | Molino | |
| 4,765,438 A | 8/1988 | Ritten | |
| 4,823,910 A | 4/1989 | Day | |
| D304,573 S | 11/1989 | Hoszowski | |
| 4,964,558 A | 10/1990 | Sandrow | |
| 5,025,747 A | 6/1991 | Grayson | |
| 5,085,164 A | 2/1992 | Whitton | |
| 5,123,372 A * | 6/1992 | Kobayashi et al. | 114/362 |
| 5,613,462 A | 3/1997 | Schwartz | |
| 5,632,224 A | 5/1997 | Schneider | |
| 5,829,380 A | 11/1998 | Smith | |

| | | | |
|---|---|---|---|
| 6,098,566 A | 8/2000 | Metcalf | |
| 6,119,615 A | 9/2000 | Porat | |
| 6,904,863 B2 * | 6/2005 | Mardikian et al. | 114/362 |
| 7,121,226 B2 * | 10/2006 | Grimaldi | 114/362 |
| 7,162,969 B2 | 1/2007 | Houlder et al. | |
| 7,182,175 B1 * | 2/2007 | Schmitt et al. | 182/88 |
| 7,237,503 B2 | 7/2007 | Stepp | |
| 7,293,521 B1 | 11/2007 | Johns, Jr. et al. | |
| 7,314,019 B1 * | 1/2008 | Curi et al. | 114/362 |
| 7,607,400 B2 * | 10/2009 | Scotti | 114/362 |
| 2005/0016289 A1 | 1/2005 | Mardikian et al. | |

OTHER PUBLICATIONS

Product Information on "Cobalt Boats A25", downloaded from internet on Feb. 15, 2010 at http://www.cobaltsboats.com/m1210/A25/index.php (1 page).
Product Information on "Cobalt Boats", downloaded from internet on Feb. 15, 2010 at http://www.cobaltboats.com/art/maedi/A2510_A259507L.jpg (1 page).
Product Information on "OPACMARE", downloaded from internet on Feb. 15, 2010 http://www.opacmare.it/pages/English_Home/101 (1 page).
Product Information on "Hydraulic Platform Lift for sailboat and power boats personal watercraft, tenders, makes . . . ", Beaver-Brand Canvas, Inc., downloaded from internet on Feb. 15, 2010 at http://www.beaver-brandcanvas.com/hydraulicplatformli.html (1 page).

(Continued)

*Primary Examiner* — Lars A Olson

(74) *Attorney, Agent, or Firm* — Stinson Morrison Hecker LLP

(57)    **ABSTRACT**

A retractable step for use with a boat in water comprising at least one moveable arm pivotally coupled with the boat, a step coupled with the arm such that the step is moveable between a stored position above the water surface and a deployed position below the water surface, and a lock configured to hold the moveable arm in a stationary position when the step is in its deployed position, but is releasable to accommodate movement of the step to its stored position.

**6 Claims, 3 Drawing Sheets**



Brunswick Corporation
Exhibit 1001
Page 1

**US 8,375,880 B1**

Page 2

OTHER PUBLICATIONS

Product Information on "Hydraulic Swim Platforms", Florida Bow Thrusters, downloaded from the internet on Feb. 15, 2010 at http://www.floridabowthrusters.com/swim-platforms.html (1 page).

Product Information on "Swim Platforms", Fleet-Hydrol, downloaded from the internet on Feb. 15, 2010 at http://www/fleet-hydrol.com.au/marine/swimplatforms.htm (1page).

* cited by examiner

Brunswick Corporation
Exhibit 1001
Page 2



*Fig.1.*



*Fig.2.*

Brunswick Corporation
Exhibit 1001
Page 3



Brunswick Corporation
Exhibit 1001
Page 4



*Fig.5.*



*Fig.6.*

Brunswick Corporation
Exhibit 1001
Page 5

US 8,375,880 B1

1

# RETRACTABLE STEP FOR BOAT SWIM PLATFORM

## CROSS-REFERENCE TO RELATED APPLICATIONS

Not Applicable.

## STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

Not applicable.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a retractable step for a boat swim platform.

2. Description of Related Art

Recreational boaters enjoy spending time swimming around the back of their boats. Entering and leaving the water from the back of the boat often requires a swim ladder. Swim ladders typically provide a series of multiple, small steps between the boat and the water. Swim ladders known in the art include ladders that can be removed from the boat or collapsed for storage.

In addition to ingress and egress issues, space for standing or sitting on the back of the boat is often limited. To add space to this area of the boat, boat owners often attach swim platforms to the transom of their boats. These swim platforms are generally positioned above the surface of the water and provide a flat, level space on which users may sit or stand while the boat is stationary. Swim platforms also provide a level surface that swimmers may use to assist them in entering or leaving the water.

## BRIEF SUMMARY OF THE INVENTION

The retractable step of the present invention is designed for use with a boat. In general, the retractable step comprises a large step that is moveable between a stored position and a deployed position. In the fully deployed position, the step may be locked below the water surface. In this position, swimmers may use the step to reach the swim platform or may rest on the step while at least partially submerged in the water. The step is easily moved from the deployed position to the stored position by releasing the lock and retracting the step into its stored position. Preferably the step is made from a material that floats on the surface of the water. Thus, when the step is unlocked from its deployed position, it floats to the water surface and is readily retrievable by a user desiring to move the step into its stored position. When in the stored position, the step is above the water surface and does not add unwanted length to the boat.

In one embodiment, the step includes a base or swim platform. The swim platform may be integral with the boat or removably attached to the boat. The swim platform preferably includes a recess or other compartment for storing the step, such that when the step is in the stored position the swim platform may be used as a flat, level platform for sitting, standing, or storage of other items.

Additional aspects of the invention, together with the advantages and novel features appurtenant thereto, will be set forth in part in the description that follows, and in part will become apparent to those skilled in the art upon examination of the following, or may be learned from the practice of the invention. The objects and advantages of the invention may be

2

realized and attained by means of the instrumentalities and combinations particularly pointed out in the appended claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a perspective view of the preferred embodiment of the retractable step attached to a boat and in a stored position.

FIG. **2** is a perspective view of the preferred embodiment of the retractable step in a stored position.

FIG. **3** is a perspective view of the preferred embodiment of the retractable step in a deployed position.

FIG. **4** is an exploded view of the stationary arm and moveable arm coupling in the preferred embodiment of the retractable step and a sectional view of the locking mechanism used with the preferred embodiment of the retractable step.

FIG. **5** is a perspective view of the underside of the preferred embodiment of the retractable step when it is not attached to a boat.

FIG. **6** is an alternative embodiment of the retractable step attached to a boat and in the deployed position.

## DETAILED DESCRIPTION OF PREFERRED EMBODIMENT

With reference to FIG. **1**, the retractable step for a boat swim platform **10** is shown mounted on boat **16** in its stored position. In this embodiment, the retractable step comprises step **12** and base **14**. Step **12** is constructed of a material characterized in that its density is less than the density of water. A preferred material for step **12** is closed cell foam having a laminate, waterproof shell. Step **12** is generally rectangular in shape and has a length less than the length of the transom of boat **16** and a width sufficient to provide a large, stable platform when in use.

With reference to FIG. **2**, step **12** is stored within base **14**. Base **14** is constructed of any sturdy, durable material typically used in the construction of boat swim platforms such as fiberglass. In this embodiment, base **14** is coupled to boat **16**. Base **14** is generally rectangular in shape and has a length at least the length of step **12** and a width sufficient to provide space for users to sit or stand. Base **14** also includes recess **17** (shown in FIG. **3**) in which step **12** may rest when in the stored position.

Also as shown in FIG. **2**, rail **18** is provided around the exposed perimeter of base **14**. Rail **18** is constructed of stainless steel tubing. Rail portion **18**a is provided on the side of step **12** that is exposed when in the stored position such that rail **18** and rail portion **18**a run in a substantially continuous fashion around base **14** and step **12**. A flange **19** is welded to rail portion **18**a to mount step **12**. Together rail **18** and rail portion **18**a protect step **12** and base **14** and may be used by swimmers for support while in the water.

With reference to FIG. **3**, step **12** is shown in its deployed position. In this embodiment, step **12** includes moveable arms **20**a and **20**b. Moveable arms **20**a and **20**b are made of metal. Moveable arm **20**a includes apertures **22**a, **22**h, and **22**c (see FIG. **4**) in one end. Moveable arm **20**b includes an aperture (not shown) for receiving bolt **23**b in one end. Rail portion **18**a runs between moveable arms **20**a and **20**b and is coupled with moveable arms **20**a and **20**b on each end. This coupling is accomplished by welding. As shown in FIG. **3**, step **12** is coupled with rail portion **18**a using elongated flange **19**. Step **12** is coupled to flange **19** using rivets **24**.

Moveable arms **20**a and **20**b are each pivotally coupled with metal stationary arms **26**a and **26**b, which in turn are coupled with base **14**. Stationary arm **26**a includes coupling aperture **28**a and lock aperture **27** on one end and arm bracket **30**a (shown in FIG. **5**) on the other end. Stationary arm **26**b

Brunswick Corporation
Exhibit 1001
Page 6

US 8,375,880 B1

3

includes stop 32 and an aperture (not shown) for receiving bolt 23*b* on one end and arm bracket 30*b* (shown in FIG. 5) on the other end. Arm brackets 30*a* and 30*b* are secured to base 14 by screws. Also as shown in FIG. 3, lock 34 is on stationary arm 26*a*. The details of lock 34 are depicted in FIG. 4 and described below.

With reference to FIG. 4, the pivotal coupling between stationary arm 26*a* and moveable arm 20*a* is shown in further detail. Stationary arm coupling aperture 28*a* aligns with moveable arm aperture 22*b*. Bolt 36, bushing 37, washers 38*a* and 38*b*, and nut 40 are used to pivotally couple moveable arm 20*a* and stationary arm 26*a* at aligned apertures 28*a* and 22*b*. Arms 20*b* and 26*b* are pivotally coupled in a similar manner using bolt 23*b*.

Turning now to lock 34, a biased, sliding pin mechanism is shown in FIG. 4. Lock 34 comprises hollow sleeve 42 anchored to stationary arm 26*a* around lock aperture 27. Sleeve 42 houses spring 44 and pin 46. Spring 44 biases pin 46 in the locking position, i.e., extending out of the end of sleeve 42. Pin head 48 at one end of pin 46 is of a size and shape that will allow a user to easily pull pin 46 into its unlocked position, i.e., within sleeve 42.

With reference to FIG. 5, the undersides of base 14 and step 12 are shown when retractable step 10 is not mounted to a boat. In this embodiment base 14 includes a pair of base brackets 50*a* and 50*b*. These base brackets extend beyond the perimeter of base 14 so as to allow a user to demountably couple base 14 with boat 16. Base brackets 50*a* and 50*b* are fastened to boat 16 with appropriate screws.

Variations on the preferred embodiment of retractable step 10 may include some or all of the following features. Some or all of the surfaces of step 12 may include a non-slip material. The exposed surface of base 14 may also include a non-slip material. Although rectangular shapes have been described for step 12 and base 14, step 12 and base 14 may be any shape including but not limited to circular, semi-circular, triangular, substantially polygonal, or any combination of these shapes. Additionally, other types of compartments for storing step 12, such as a shelf, a two-sided structure, or a three-sided structure, may be provided on or below base 14 instead of or in conjunction with recess 17. Finally, other types of locks, including a common cotter pin, a fastening eye bolt, or a trap-door automatic catch lock may be used.

In use, step 12 is capable of being moved between a stored position as shown in FIG. 2 and a deployed position as shown in FIG. 3. In the stored position, step 12 is within recess 17 and moveable arm aperture 22*c* is aligned with lock aperture 27 of stationary arm 26*a*. Step 12 is locked into this position by releasing pin 46 such that it engages apertures 27 and 22*c*. When locked in this position, the underside of step 12 is flush with the top surface of base 14, thus restoring full functionality to base 14 as a platform with a level surface that may be used for standing, sitting, or storage.

To move step 12 from the stored position to the deployed position, pin head 48 is used to recess pin 46 into sleeve 42 whereby pin 46 no longer engages moveable arm aperture 22*c*. While pin 46 is in this position, step 12 may be rotated about bolt 36 and into the deployed position below the water surface. When in the fully deployed position, moveable arm aperture 22*a* aligns with lock aperture 27. When pin 46 is released, it engages both apertures 27 and 22*a*. Spring 44 biases pin 46 in this position, thereby locking moveable arm 20*a* in place. Moveable arm 20*b* is prevented from further movement in the direction of deployment by stop 32. When in the deployed position, step 12 provides a seat on which swimmers may rest while partially submerged in the water or a step for swimmers to use as they transition into or out of the water.

An alternative embodiment of the present invention is shown in FIG. 6 and is generally designated with the number 100. Here, retractable step 100 comprises base 114, which is

4

integral with boat 116 such that base brackets 50*a* and 50*b* (shown in FIG. 5) are not necessary. In this embodiment, base 114 is not removable from boat 116. The components and operation of retractable step 100 is the same as those described above with regard to retractable step 10.

While specific embodiments have been shown and discussed, various modifications may of course be made, and the invention is not limited to the specific forms or arrangement of parts and steps described herein, except insofar as such limitations are included in the following claims. Further, it will be understood that certain features and subcombinations are of utility and may be employed without reference to other features and subcombinations. This is contemplated by and is within the scope of the claims.

The invention claimed is:

**1**. A retractable step for use with a boat in water comprising:

a base having a recess;

a pair of stationary arms, each of said arms coupled with said base;

a pair of moveable arms, each of said moveable arms coupled with one of said stationary arms;

a step having a top side and an underside, said step coupled with said moveable arms and capable of being rotated 180° between a stored position within said recess, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and

a spring biased locking mechanism configured to hold at least one of said moveable arms in a stationary position when said platform is in said deployed position and releasable to accommodate movement of said platform to said stored position.

**2**. The retractable step of claim **1**, wherein said base is demountably coupled with the boat.

**3**. The retractable step of claim **1**, wherein said base is integral with the boat.

**4**. The retractable step of claim **1**, wherein said step comprises a material characterized in that it is less dense than water.

**5**. A deployable swim step for use with a boat in water comprising:

a step having a top side and an underside;

means for coupling said step with the boat, said coupling means configured to permit rotation of said step 180° from a stored position above the water surface, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and

means for locking said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position.

**6**. A method of deploying a retractable step used with a boat in water, said method comprising:

providing a base having a recess;

providing a step having a top side and an underside, said step moveably coupled with said base and positioned within said recess when in a stored position, wherein said underside is exposed;

providing a spring biased locking mechanism to hold said step in said stored position;

disengaging said locking mechanism;

rotating said step 180° out of said recess and into a deployed position below the water surface, wherein said top side is exposed; and

reengaging said locking mechanism to hold said step in said deployed position.

*    *    *    *    *

Brunswick Corporation
Exhibit 1001
Page 7

**PROOF OF SERVICE**

I hereby certify that on January 27, 2017, I electronically transmitted this Brief of Appellants to the Clerk of the Court using the Court's ECF system.  I further certify that counsel of record for Appellee are being served with a copy of this Brief by electronic means via the Court's ECF system as follows:

*Counsel for Appellee*

B. Scott Eidson
Samir Ramesh Mehta
STINSON LEONARD STREET LLP
7700 Forsyth Boulevard
Suite 1100
St. Louis, MO 63105
(314) 863-0800
(314) 863-9388 (Fax)
scott.eidson@stinson.com
samir.mehta@stinson.com

Penny R. Slicer
STINSON LEONARD STREET LLP
1201 Walnut Street
Suite 2900
Kansas City, MO 64106
(816) 691-3438
(816) 691-3495 (Fax)
penny.slicer@stinson.com

*/s/ Jason C. White*
Jason C. White

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,230 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.


*/s/  Jason C. White*
Jason C. White
*Counsel for Appellants,*
*Brunswick Corporation and Sea Ray Boats, Inc.*

Dated: January 27, 2017